(No. 36117.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD SHRAKE, Plaintiff in Error.

*Opinion filed May 25, 1962.*

142

JAMES J. GENDE, of East Moline, appointed by the court, (LONG, JACKSON & GENDE, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and RICHARD STENGEL, State's Attorney, of Rock Island, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and PETER DENGER, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Edward Shrake, entered a plea of guilty to a burglary indictment returned against him in the circuit court of Rock Island County and, after a hearing in aggravation and mitigation, was sentenced to the penitentiary for a term of two to ten years. On this writ of error the single question presented for determination is whether facts disclosed during the hearing in aggravation and mitigation raised such *bona fide* doubt of defendant's sanity that it became the duty of the trial court to cause a sanity hearing to be held.

The trial or sentencing of a person charged with a criminal offense, while he is insane, violates his constitu-

tional rights and is expressly prohibited by statute. (*People v. Robinson,* 22 Ill.2d 162; Ill. Rev. Stat. 1959, chap. 38, par. 593.) And while we have held it is the duty and responsibility of a defendant or his counsel to raise the question whether an accused is sane at the time of trial, (*People v. Claggett,* 22 Ill.2d 471 ; *People v. Maynard,* 347 Ill. 422,) we have further held that if, before or during trial, facts are brought to the attention of the court, either from its own observation or by suggestion of counsel, which raise a *bona fide* doubt as to a defendant's present sanity, it becomes the duty of the court not to proceed until a jury has been empaneled and the doubt removed by a sanity hearing. (*People v. Burson,* 11 Ill.2d 360; *People v. Cleggett,* 22 Ill.2d 471.) When the question of sanity at the time of trial is raised, the issue presented is whether defendant has the capacity to make a rational defense, sufficient mind to convey necessary information to his attorney or the court, the capability of understanding the nature of the charges against him and of co-operating with his counsel, and sufficient mind to conduct his defense in a rational and reasonable manner. (*People v. Burson,* 11 Ill.2d 360.) It is on the basis of these principles that defendant's present claim is founded.

Facts relevant to the contention that a *bona fide* doubt of his sanity existed show that defendant, while represented by the public defender, entered a plea of guilty to a burglary committed in September 1956. Neither defendant nor his counsel raised any issue of insanity and the trial court accepted the plea of guilty after first advising defendant of his rights and fully admonishing him as to the consequences of his plea. Thereafter, during the hearing in aggravation and mitigation, where the severity of defendant's punishment was the only issue raised, it was disclosed that he had been previously convicted of burglary in June, 1954, that he had been sentenced to the penitentiary for a term of one to five years, and that he had been paroled after serving 14 months. Further, it was brought out that defendant had

admitted to four other burglaries committed in a 13-month period since he had been paroled, in addition to the crime for which he was being tried, and that for the seven months immediately prior to trial, or since September, 1956, he had been confined in jail by Iowa authorities.

Detailing personal and medical history, the 24-year-old defendant said he had been in an automobile wreck in 1953 and that he had been hospitalized for 38 weeks with a broken leg, broken collar bone and a brain injury. He said he had received no private medical treatment since that time, but that he had been in the hospital twice while in the penitentiary and that he had been a voluntary patient in a State hospital for a period of two months soon after his parole. The difficulty, he stated, was a pinched nerve in his head for which he needed an operation and which caused constant and severe head pains. He said that the Iowa and Rock Island jail authorities had kept him doped up with phenobarbital in the months preceding the trial but, in response to a direct question by his counsel, he stated that he understood the nature of the proceeding, that he knew what he was charged with and what.he "was doing here this morning."

Information relating to defendant's work experience since his parole revealed that he obtained a job in a foundry in December, 1955, and he stated in one instance that he had continued in such employment up until the time of his arrest. He complained that this work was too heavy, stated that his inability to find lighter work was what led him to steal, and that if he could have found a lighter job his crimes would not have occurred. It was also revealed that defendant had married in February, 1956, while on parole, and that his wife became pregnant. On this occasion defendant represented to the court that he had stolen because of his wife's pregnancy and that he "took enough mostly for her medical care, and rent, and enough to last us where I thought I could get me a job." Finally, when asked directly

by the court if he was claiming his misdeeds were the result of his "injuries and nervous condition," defendant replied: "I would say yes." In response to further questioning by the court, he admitted that he knew right from wrong, that he knew and had known the consequences of his acts and again stated his crimes would not have been committed if he could have found work he could handle.

We see nothing in these facts which establish such *bona fide* doubt of defendant's sanity as to have required the court to cause a sanity hearing to be held. No claim was made at any time that defendant was insane, nor did it appear that he had ever been so adjudicated. Nothing in his testimony or demeanor suggests a lack of mental capacity, but shows instead that he understood the nature of the proceedings against him, that he was fully capable of cooperating with his counsel and the court, and that he knew and had known at all times the consequences of his criminal actions. It is true defendant said he was suffering from a pinched nerve in his head and that he was in constant pain, but we see no basis upon which the trial court should have equated his physical injury and suffering with a condition of mental incapacity. And while his motives for committing his crimes bear little, if any, relationship to his mental condition at the time of trial, we cannot help but note that his "injuries and nervous condition" came as a third alternative after he had already stated he had stolen, first, because he could not find lighter work and, second, to get money needed for his wife's pregnancy.

We hold, therefore, that the trial court did not err and violated no duty in accepting defendant's plea of guilty. Accordingly, the judgment of conviction is affirmed.

*Judgment affirmed.*