THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD HINTON, Defendant-Appellant.

(No. 53566;

First District—March 10, 1971.

410

Gerald W. Getty, Public Defender, of Chicago, (Suzanne M. Kohut and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Anthony M. Montemurro, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

This is an appeal from the denial of defendant Edward Hinton's Section 72 petition to vacate his conviction under indictment No. 67-1969. A series of criminal acts was committed on May 21, 1967, between the

hours of one and three A.M., for which defendant Edward Hinton was indicted. The order of these criminal acts in this two hour period is reflected in the chronology of the indictment numbers.

Indictment No. 67-1961 charged Edward Hinton with the murder of Dwight Wynne. Indictment No. 67-1967 charged Edward Hinton with aggravated battery on the person of Cleveland Wells. Indictment No. 67-1968 charged Edward Hinton with the attempted murder and robbery of John Hall and Lily Starkey. Indictment No. 67-1969 charged Edward Hinton with the attempted murder and armed robbery of Mr. and Mrs. J. C. Your, Lorenzo Loving and Jerome Sauls. Indictment No. 67-1970 charged Edward Hinton with the robbery of Mr. & Mrs. Delton Bailey.

The State elected to proceed on indictment No. 67-1969, the attempted murder and armed robbery of J. C. Your, Rosie Lee Your, Lorenzo Loving, and Jerome Sauls, first. Defendant Hinton pleaded not guilty and was tried on April 25, 1968. He was found guilty by a jury as to four counts of attempted murder and four counts of armed robbery and was sentenced to the penitentiary to concurrent sentence of 15-20 years and 40-60 years respectively. There was a second trial in May of 1969 in which the prosecution tried defendant Hinton on indictment Nos. 67-1967, 67-1968 and 67-1970. A jury found the defendant not guilty as to indictment No. 67-1967. The jury also found the defendant not guilty by reason of insanity as to indictments 67-1968 and 67-1970.

In August of 1969, defendant filed a petition to vacate his conviction under indictment 67-1969 pursuant to Section 72 of the Illinois Civil Practice Act. This appeal comes from a denial of that petition. Defendant contends on appeal: (1) he was denied due process of law by the trial court's failure to conduct a competency hearing; (2) he was denied his right to counsel by the failure of appointed counsel to request a competency hearing; and (3) he was improperly denied relief under Section 72 of the Civil Practice Act since at his subsequent trial he was adjudicated insane at the time of the crime.

The facts adduced at the April, 1968 trial are as follows: On May 21, 1967, at about 2:30 in the morning, Mr. & Mrs. J. C. Your were coming home from a party. They were dropped off by friends near the corner of Lexington and Central Park in the City of Chicago. They intended to walk over to Central Park to a barbeque place to get something to eat to take back to their home. As they crossed the intersection of Lexington and Central Park, four male Negroes approached them with guns drawn. One of them, Edward Hinton, put his gun to Mr. Your's back and said, "hold it, this is a stickup." Mrs. Your evidenced some fright, and her husband said, "it's all right, this is a stickup, they've got guns, don't say anything, be quiet." While the four young men confronted

Mr. and Mrs. Your, two other young men, Lorenzo Loving and Jerome Sauls, walked toward the six people. Loving had a pair of roller skates slung over his shoulders and Sauls was carrying a transistor radio. The two were coming from a roller skating rink on Madison Street.

As the two approached, one of the four men stopped Loving and Sauls, and said, "this is a stickup." Hinton and the other three then forced all of these people, Jerome Sauls, Lorenzo Loving and Mr. & Mrs. Your to a basement-way at 3541 West Lexington where they were told to line up against the wall with their hands up against the wall. Each of the four complied. Then the four men searched the Yours, Sauls, and Loving. They took $85.00 from Mr. Your and some three dolars in change. A couple of quarters fell to the ground and Edward Hinton said, "where did that god damn money come from?" Hinton turned his attention to Mrs. Your, removed the purse from her arm and took a bottle of whiskey from it. Finding no money in the purse Hinton reached into Mrs. Your's bosom, but found no money there either. Hinton then turned to his companions and said, "shoot that bitch, she ain't got no money."

At that, Mr. Your looked at Edward Hinton and saw him fire his gun into his wife's face. As Mr. Your clutched his wife, Hinton shot her again, this time in the back. Mr. Your pleaded, "don't hurt her, don't hurt her, shoot me", whereupon Hinton shot Mr. Your in the center of the back. Then all four started shooting. Mr. Your was shot three more times, in the neck, in the side of the head and in the arm. Lorenzo Loving cried out, "don't shoot, please don't shoot" but he and Jerome Sauls were also shot. Edward Hinton and his companions then fled with the money, the radio and the roller skates.

■■ Defendant's first contention is that he was denied due process of law by the trial court's failure to conduct a hearing on his competency to stand trial. An incompetent person is one who is unable, because of a mental condition, to understand the nature and the purpose of proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1967, ch. 38, par. 104—1.) The Illinois Supreme Court requires the trial judge to conduct a hearing on the defendant's competency where the evidence raises a *"bona fide* doubt" of his competency to stand trial. (*People v. Shrake* (1962), 25 Ill.2d 141, 182 N.E.2d 754.) Even where counsel does not suggest the incompetency of the defendant, where facts are brought to the attention of the court raising a *bona fide* doubt as to the defendant's competency, it becomes the duty of the court not to proceed until a jury has been empaneled and the doubt removed by a sanity hearing. *People v. Shrake, supra,* and *People v. Wilson* (1963), 29 Ill.2d 82, 193 N.E.2d 449.

In the instant case, defense counsel did not suggest that the de-

fendant was incompetent. Before trial, the judge asked defense counsel:

"THE COURT: It is your opinion, based upon your conversation with him, that he knows the nature of the charge pending against him and is able to cooperate with you?

DEFENSE COUNSEL: Yes sir, he can cooperate, yes, sir. I have been satisfied right along on that."

Also before trial the State incorporated into the record two reports from the Behavior Clinic regarding the competency of the defendant to stand trial. The reports, based on two psychiatric examinations of the defendant, reveal a diagnosis of sociopathic personality disturbance evidenced by emotional immaturity and lack of training and guidance. The reports conclude the defendant knows the nature of the charge and is able to cooperate with his counsel.

■■ The quoted colloquy and the reports were the only evidence brought to the attention of the trial court regarding defendant's competency. No claim was made at any time that defendant was insane. Defendant took the stand in his own defense and stood up well under cross-examination. Nothing in his testimony or demeanor suggests a lack of mental capacity. We see nothing in these facts which establishes such *bona fide* doubt of defendant's competency as to have required the trial court to cause a sanity hearing to be held. The fact that defendant may possess a sociopathic personality and suffer from psychiatric and social disturbances does not create a *bona fide* doubt of his competency. (*People v. Hammond* (1970), 45 Ill.2d 269, 259 N.E.2d 44.) Furthermore, a second jury's adjudication of defendant as insane at the time of other offenses is not, as defendant contends, a fact existing at the time of defendant's trial, which if presented to the court would have raised a *bona fide* doubt as to his competency. An adjudication of insanity at the time of an offense is not an adjudication of incompetency to stand trial. Even at the subsequent trial where defendant was found not guilty by reason of insanity, the trial court found him competent to stand trial. For these reasons we reject defendant's first contention.

Defendant next contends counsel's failure to request a competency hearing coupled with his failure to raise the defense of insanity and his non-advocative representation in general denied the accused his right to counsel and due process of law.

■■ The Illinois Supreme Court has set out the standard for determining incompetency of counsel in *People v. Washington* (1968), 41 Ill.2d 16, 22, 241 N.E.2d 425. There the court stated:

"The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency will not vitiate the trial un-

less on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce."

In the instant case, it is impossible to say the representation of defense counsel was of such low caliber as to reduce the trial to a farce. The record discloses defense counsel showed his competency in cross-examining the State's witnesses and setting up an alibi defense for the defendant. The fact that counsel asserted an alibi defense and not an insanity defense does not amount to a denial of due process.

"Insanity is a defense to be asserted at the trial as any other defense; and the decision not to advise such a defense, even if it were a mistake does not of itself show that defendant was inadequately represented. Mistakes of counsel will not amount to a denial of a due process unless on the whole the representation is of such low caliber as to be equivalent of no representation at all  *  *  *  " *People v. Heirens* (1954), 4 Ill.2d 131, 143, 122 N.E.2d 231.

For these reasons we reject defendant's second contention.

Defendant finally contends the trial court erred in denying defendant's petition to vacate his conviction under indictment 67-1969 pursuant to Section 72 of the Civil Practice Act since a second jury found him not guilty of the offenses covered by indictments 67-1968 and 67-1970 by reason of insanity. Ill. Rev. Stat., ch. 110, par. 72, provides in part:

"Relief from final orders, judgments and decrees, after 30 days from the entry thereof may be had upon petition as provided in this section."

■■■ Section 72, the statutory equivalent of the common law writ of *coram nobis*, brings before a court a judgment previously rendered by it for the purpose of review or modification on account of some error of fact and not of law affecting the validity and regularity of the proceedings, and which was not brought into issue at the trial thereof. The purpose of the proceeding is to have the judgment declared void and vacated and a new trial granted. (24 C.J.S. Criminal Law, §1606.) A proceeding under Section 72 is not a retrial of the original cause, but merely a determination of whether some fact or facts were in existence but unknown to the moving party and to the court which, if known, would have caused the court to rule differently. The Statute is not intended to authorize any court to review and revise its opinion; nor is it intended to allow an accused to re-try his case using a different defense with greater success.

The Illinois Supreme Court has repeatedly construed this section to permit the vacating of judgments only where facts exists which had they been known at the time of judgment would have prevented its rendition. The defense relies heavily upon and the State attempts to dis-

tinguish two such cases, *People v. Schroers* (1948), 399 Ill. 428, 78 N.E.2d 219 and *People v. McLain* (1967), 37 Ill.2d 173, 226 N.E.2d 21. In *People v. Schroers,* facts such as brain damage to the defendant as a result of a gunshot wound and an attempted suicide by the defendant, both of which occurred before the time of trial but had not been brought to the attention of the trial judge caused reversal. In *People v. McLain, supra,* facts such as defendant's prior commitment to a mental institution and his attempted suicide, both of which occurred before the time of trial but had not been brought to the attention of the trial judge caused the reviewing court to vacate judgment and remand for a new trial.

■■ The instant case is distinguishable from *People v. Schroers* and *People v. McLain.* In the case before us, defendant Hinton has demonstrated no such facts which existed at the time of his trial that had not been brought to the attention of the trial court. Defendant contends the subsequent adjudication of his insanity by a second jury of another crime is such a fact. We find the case before us similar to *People v. Williams* (1949), 337 Ill.App. 385, 86 N.E.2d 293, where this court found, in a Section 72 proceeding, that a prior adjudication of defendant as feeble minded, which adjudication was not brought to the attention of the trial court, was not a fact that required vacating defendant's conviction. Accordingly, we hold a subsequent adjudication of defendant as insane as to other crimes is not a fact that requires vacating defendant's conviction.

■■ Defendant had the opportunity to interpose the affirmative defense of insanity at the time of trial; two reports of the Behavior Clinic were entered into the record. He chose instead to interpose the defense of alibi. He cannot now interpose the defense of insanity under the guise of Section 72. We cannot allow defendant to re-try his case on a different defense under the guise of a fact in existence but unknown to the trial court which, if known, would have caused the court to rule differently.

For these reasons, we affirm the trial court's denial of defendant's Section 72 petition.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.