(No. 44302.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. EDWARD HINTON, Appellant.

*Opinion filed September 20, 1972.*

GERALD W. GETTY, Public Defender, of Chicago
(SUZANNE M. KOHUT and JAMES J. DOHERTY,
Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Spring-
field, and EDWARD V. HANRAHAN, State's Attorney, of
Chicago (JAMES B. ZAGEL, Assistant Attorney General,
and ELMER C. KISSANE and MARK T. ZOBOR, Assis-
tant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, Edward Hinton, filed a petition under section 72 of the Civil Practice Act (Ill.Rev.Stat. 1971, ch. 110, par. 72) in the circuit court of Cook County to vacate his prior conviction in that court for attempted murder and armed robbery. After a hearing his petition was denied, and on appeal the Appellate Court, First District, affirmed. *People v. Hinton (1971), 132 Ill.App. 409, 270 N.E.2d 93.* We granted leave to appeal.

The defendant and three others were charged in five separate indictments with the commission of a series of criminal acts at different locations in Chicago between the hours of 1 A.M. and 3 A.M. on May 21, 1967. In point of time the various acts apparently occurred in the same order as the numerical sequence of the indictment numbers. No. 67-1961 charged the murder of Dwight Wynne; No. 67-1967 charged aggravated battery on the person of Cleveland Wells; No. 67-1968 charged attempted murder and robbery of John Hall and Lily Starkey; No. 67-1969 charged attempted murder and armed robbery of Mr. and Mrs. J. C. Your, Lorenzo Loving and Jerome Sauls; and No. 67-1970 charged robbery of Mr. and Mrs. Delton Bailey. For purposes of this opinion these indictments will be referred to as indictments 1 through 5 respectively.

The State chose to proceed first on indictment 4 which charged attempted murder and armed robbery of Mr. and Mrs. Your, Lorenzo Loving and Jerome Sauls. Counsel was appointed to represent the defendant, and he entered a plea of not guilty. On June 15, 1967, the court ordered a Behavior Clinic examination of the defendant for the purpose of ascertaining his competency to stand trial. On June 29, 1967, William H. Haines, M.D. filed his report of psychiatric examination which concluded with the diagnosis: "Sociopathic Personality Disturbance. He knows the nature of the charge and is able to cooperate with his counsel."

During a pretrial appearance in court to seek a continuance, defendant was found guilty of direct contempt of court for what the court found to be unprovoked assault on a deputy sheriff in the courtroom. Thereafter, additional motions for psychiatric examination were made and allowed, and on January 10, 1968, another order was entered by the court directing a further Behavior Clinic examination to determine competency and sanity. Defendant was again examined by Dr. Haines who filed another report of psychiatric examination on January 31, 1968. The report made reference to information obtained from another agency which knew him from 1961 until 1966 to the effect that defendant was "an emotionally immature, inadequate, hostile, narcissistic youth who had a medical background of asthma and headaches." Although he lacked training, supervision and guidance, "his formal mental status disclosed no defects in the sensorium, orientation or memory" and "he was not mentally ill and not in need of mental treatment in a psychiatric facility." As in the case of the previous report, the diagnosis was: "Sociopathic Personality Disturbance. He knows the nature of the charge and is able to cooperate with his counsel."

Prior to commencement of the trial on April 23, 1968, the Behavior Clinic reports were made a part of the record and the following colloquy took place between the trial judge and defense counsel:

"The Court: It is your opinion, based upon your conversations with him, that he knows the nature of the charge pending against him and is able to cooperate with you?

Defense Counsel: Yes, sir, he can cooperate, yes, sir. I have been satisfied right along on that."

The trial then commenced. There was testimony that at about 2:30 A.M. on May 21, 1967, Mr. and Mrs. Your were returning home from a party when they were stopped on the street by the defendant and three other persons with guns drawn. Defendant held his gun to Mr. Your's back and said "hold it, this is a holdup." Mr. Your told his

wife to be quiet. At this point two young men, Lorenzo Loving and Jerome Sauls, happened by on the street and were also stopped by defendant and his companions. Mr.. and Mrs. Your, Loving and Sauls were searched by the four men. Eighty-five dollars in cash was taken from Mr. Your. Defendant took Mrs. Your's purse and removed a bottle of whiskey from it. He then searched her person, and upon finding no money, he said, "We might as well shoot that bitch because she ain't got no money."

Defendant then shot Mrs. Your—first in the face and then in the back. Mr. Your pleaded, "don't hurt my wife, shoot me if you want to hurt anybody," whereupon defendant shot Mr. Your in the back. All four of the assailants then started shooting which resulted in Mr. Your being shot three more times in the neck, head and arm. Loving and Sauls were also shot. Defendant and his compansions the fled with the money and other items they had taken from the victims.

Defendant presented an alibi defense. He testified that on Friday and Saturday, May 19 and 20, he helped some friends named Robinson move furniture to a new house and that he was at their house early the following morning when the incidents in question took place. The three co-defendants, who were friends of his, came to the house in the early morning hours of May 21, 1967, but they left at about 2 A.M. Defendant remained at the Robinson house until about 2:45 A.M. when he left and took the bus to his home to wash up and change clothes. He then returned to the Robinson house at about 5:30 A.M. He denied any involvement in the crimes he was charged with committing.

On April 25, 1968, the jury returned a verdict of guilty as to four counts of attempted murder and four counts of armed robbery, and defendant was sentenced to the penitentiary for concurrent terms of 15 to 20 years and 40 to 60 years respectively. About one year later, in May of 1969, the defendant was tried on indictments 2, 3

and 5. In that trial he interposed an insanity defense, and he was found not guilty as to indictment number 2 and not guilty by reason of insanity as to indictments number 3 and 5. The jury also found that the defendant was still insane at that time, and he was committed to the Department of Mental Health in May, 1969. Defendant's section 72 motion alleges that he was released from the Department of Mental Health on the same date and transferred to the Cook County jail to await transfer to the penitentiary to begin serving the sentence imposed on his prior conviction on indictment number 4.

The purpose of a section 72 petition is to permit the vacation of judgments where facts existed which, had they been known at the time judgment was entered, would have prevented its rendition. The various types of error of fact which the petition may be employed to correct include such matters as death of a party pending suit and before judgment, infancy where the party is not properly represented, incompetency at the time of trial, and a valid defense which was not made due to duress, fraud or excusable mistake. (*Glenn v. People (1956), 9 Ill.2d 335; People v. Quidd (1951), 409 Ill. 137; Schroers v. People (1948), 399 Ill. 428.*) The gist of defendant's section 72 petition and his argument in support thereof is that he was insane at the time of commission of the crimes charged in indictment 4; that he was also insane at the time of his trial on that indictment; and that the second jury's finding that he was not guilty by reason of insanity as to indictments 3 and 5 and the various factors on which these findings were based were "facts" which, if known, would have precluded the court's entering judgment on the jury's verdict of guilty at the first trial.

The principal issues raised by the record and pleadings before us are twofold: (1) Did the defendant's section 72 petition and supporting evidence establish facts which create a *bona fide* doubt that defendant was competent to stand trial at the first trial; and (2) do the constitutional

mandates of due process of law and the provisions of section 72 require that the defendant's conviction in the first trial on indictment 4 where he did not raise the defense of insanity be vacated for the reason that in the subsequent trial on indictments 3 and 5 he was found not guilty by reason of insanity.

With respect to the first issue concerning defendant's competency to stand trial, it is significant to point out that at no time in the trial below was there any claim that the defendant was not able to understand the nature of the charges against him and to cooperate with his counsel. Prior to trial there were two Behavior Clinic reports which indicated that he was competent, and his attorney indicated to the court that based on his conversations with the defendant he was of the same opinion. Defendant testified in his own behalf during the trial, and there was nothing in his testimony nor any other factors arising during the trial which are alleged to have created a *bona fide* doubt as to his competency to stand trial. Parenthetically, we note that apparently there was also no doubt as to his competency at the second trial at which he was found not guilty by reason of insanity.

In the section 72 proceeding, defendant introduced excerpts from the testimony of a psychiatrist and a psychologist who had testified in the second trial. Each of them testified in response to a hypothetical question based on defendant's background and the details of the various crimes he was charged with committing that it was their opinion that defendant exhibited an epileptoid personality and that he was suffering from psychomotor seizures in the early morning hours of May 21, 1967. It is apparent that this evidence was limited to the question of defendant's sanity at the time the criminal acts were committed and did not have any direct bearing on the separate and distinct question of whether he was competent to stand trial on April 23, 1968. We also note that there is no contention that any of the facts concerning defendant's

past history on which this opinion was based were unknown to counsel or the court prior to trial. To the contrary, it appears that many of these matters appeared in the two Behavior Clinic reports submitted to the court prior to trial.

The other "fact" which defendant relies on as raising a *bona fide* doubt as to his competency is the finding of the jury at the subsequent trial that he was not guilty by reason of insanity on indictments 3 and 5. This finding obviously could not have been known at the first trial for the equally obvious reason that it did not exist at that time. In this respect this case differs from *Schroers v. People (1948), 399 Ill. 428, People v. McLain (1967), 37 Ill.2d 173,* and *People v. Samman (1951), 408 Ill. 549,* relied on by defendant. In *Schroers* the court vacated the defendant's plea of guilty when it was discovered that due to a prior gunshot wound to the head the defendant could not understand the consequences of his plea. In *McLain* the judgment of conviction was vacated, since various factors including judicially ordered commitments to mental institutions and attempted suicides occurring prior to trial were unknown to the court. And in *Samman* the court held that the lower court should have upheld defendant's section 72 petition which alleged that at the time of trial and conviction for armed robbery the court was unaware of the fact that less than a year earlier he had been adjudicated insane by a court in California and committed to a mental institution from which he escaped shortly before the trial. While we do not intend to suggest that subsequent occurrences can never be considered in determining the merits of a section 72 petition, we are of the opinion that on the facts before us the subsequent finding of not guilty by reason of insanity as to indictments 3 and 5 does not create a *bona fide* doubt as to the defendant's competency to stand trial on indictment 4 in the context of this section 72 proceeding.

This brings us to the second principal issue of whether

the constitutional mandates of due process of law and the provisions of section 72 require the vacation of the judgment of conviction by reason of the fact that in the subsequent trial on different charges the jury found him not guilty by reason of insanity. In our opinion they do not. One basic premise of defendant's argument is that the findings of the second jury constitute an adjudication that defendant was insane as a matter of law at the time of the commission of the crimes charged in indictment 4 and that such adjudication, by an inverse application of the doctrine of *res judicata,* relates back to the time of the first trial and necessitates vacation of the judgment. In our opinion this argument is based on a misconception of the legal effect of the second jury's findings. At the second trial defendant interposed the defense of insanity, and on the particular evidence presented to it the jury found him not guilty by reason of insanity as to the crimes charged in indictments 3 and 5. These findings, however, did not constitute an adjudication that as a matter of law he was insane at the time of commission of the separate crimes charged in indictment 4 which would operate to vitiate the earlier judgment of conviction on that indictment.

As we have previously indicated, there has been no showing of any facts which raise a *bona fide* doubt of the defendant's ability to understand the nature of the charges against him and to cooperate with his counsel in conducting his defense. No contention is made that defendant was in any manner prevented from raising the defense of insanity through fraud, duress, excusable mistake, or any lack of understanding of his rights. (*Glenn v. People (1956), 9 Ill.2d 335.*) To the contrary, it is quite possible, as the trial court concluded, that since the trial on indictment 4 was the first of possibly five trials on separate charges which allegedly occurred within a two-hour period, the decision to start with an alibi defense at the first trial was a well reasoned strategic decision on the part of the defendant and his counsel. In our opinion neither the

requirements of due process of law nor the purpose and scope of section 72 call for vacation of the judgment of conviction in the first trial, where the alibi defense failed him, simply because he succeeded in asserting an insanity defense at a subsequent trial on other charges.

For the reasons above stated the judgment of the Appellate Court, First District, is affirmed.

*Judgment affirmed.*