THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SIDNEY BICKHAM, Defendant-Appellant.

(No. 72-12; ▮▮▮▮▮▮▮▮▮▮

Fifth District—August 29, 1973.

Robert E. Farrell, of Defender Project, of Mt. Vernon, (Michael A. Schmitt, Senior Law Student, of counsel,) for appellant.

Don P. Koeneman, State's Attorney, of Chester, for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the Circuit Court of Randolph County finding him guilty of the crime of murder after his plea of guilty to that charge.

Defendant contends that the trial court erred in accepting his guilty plea without first determining whether he was competent to stand trial.

The record discloses that the defendant, a prison inmate, had been given a knife for the purpose of cutting some bacon while working in the inmates kitchen, and without any discernable motive, wrapped the knife inside a towel, walked into the dining room and began to stab and slash three other inmates of the penitentiary, killing one of them and seriously wounding the other two.

Immediately prior to trial, the defendant's attorney presented a number of motions, including a petition to appoint medical experts to determine the sanity of the defendant. In explaining his petition, which was opposed by his client, the defense attorney stated:

"Your Honor, on November 3 I went to the penitentiary and interviewed numerous witnesses whose names were furnished to

me by the State on apparently a week and one-half before that. I don't have the exact date. In interviewing these State witnesses I made a tally at the end of the interview and over two-thirds of them commented based on their past experience in living with Mr. Bickham at the penitentiary for quite some time, they felt he was sick in the head, crazy and so forth, especially at the time of the offense. Petitioner has informed me, I mean the accused has informed me one of the defense witnesses the accused always felt someone was out to get him. On October 14 I was down at the penitentiary to visit with the defendant. He attacked another inmate who was much smaller in size, walking with another guard, in the presence of at least four or five other guards in the visitors' center. In my presence he attacked this smaller inmate who was merely walking by with another guard. On being questioned by me shortly thereafter why he attacked the inmate, the defendant stated he had his hands in his pockets and looked at me like he was going to do something to me. Now, after I talked to the State's witnesses and then I thought of this incident and then I looked at the Indictment and what the allegations are and some of the statements from other State's witnesses as to what transpired here, after consulting with another attorney who visited with me on several occasions down at the penitentiary to interview these witnesses, I feel that it's absolutely necessary that the accused have a medical expert examine him to determine his sanity. I make my judgment on the basis of what I have said and what I have seen and I would not like to proceed to trial without having a medical expert examine him first."

The petition was argued and denied. A short time thereafter, the defense attorney presented substantially the same motion and attempted to clarify his position that he needed time to have the defendant examined, no matter who was going to pay for it. The State's Attorney seemed to acquiesce, stating:

"I think if we go through all this again, if we continue this definitely until December 13, give them a date to have the man examined by any psychiatrist, but that there be no misunder- standing there will be no more dilatory tactics to preclude this case going to trial December 13."

However, the court again denied the petition. Shortly thereafter, the defendant indicated that he wished to address the court. The following transpired:

"Defendant Bickham: I would like to know can I get me some lawyers that are going to defend my case. I don't think these two

cats, these two lawyers are defending my case. Lot of motions were filed that give these lawyers some—

By the Court: You mean some ideas?

Defendant Bickham: I would like a black attorney that would defend me from some NWACP [*sic*], some association and I don't think they did a very good job on my case, you know, and I could use a convict lawyer to get a lot of this stuff done to help me out.

By the Court: You are making a motion that they be removed?

Defendant Bickham: Yes, sir.

By the Court: And they be substituted by a black lawyer to defend your case?

Defendant Bickham: Yes.

By the Court: Motion be denied.

Mr. Sachtleben: Your Honor, in view of that statement, I wish to say to the Court that this does come as a surprise to us and I want to call to the Court's attention something that went into the record no more than fifteen minutes ago where the accused said he was completely satisfied with our representation. I think this goes to show the fact once more that we need a psychiatric examination. I only want to call it to the Court's attention."

The motion for removal of his attorney was denied. The next day the defendant filed a motion for leave to file an interlocutory appeal. This motion was denied and the impaneling of the jury was commenced. Shortly thereafter, the defendant's attorney informed the court that the defendant wished to enter a plea of guilty in accordance with an agreement worked out with the State's Attorney. The court indicated that it was willing to concur in the negotiated plea and proceeded to accept that plea in conformity with Supreme Court Rule 402.

The Illinois Supreme Court has laid down the standard to be applied in such situations in the case of *People v. Shrake,* 25 Ill.2d 141, at 143:

"* * * [W]e have further held that if, before or during trial, facts are brought to the attention of the court, either from its own observation or by suggestion of counsel, which raise a *bona fide* doubt as to a defendant's present sanity, it becomes the duty of the court not to proceed until a jury has been empaneled and the doubt removed by a sanity hearing."

Here, unlike most of the cases dealing with such an issue (see, *e.g., People v. Plecko,* 46 Ill.2d 301; *People v. Sephus,* 46 Ill.2d 130), there was absolutely no professional opinion upon which to base a judgment as to the defendant's present sanity. The only basis upon which the trial judge could have made his decision was the behavior of the defendant during the course of the proceedings.

In our opinion, the facts and law in this case are almost identical to those of *Pate v. Robinson,* 383 U.S. 375, 15 L.Ed.2d 815, 86 S. Ct. 836, wherein the Court said at 385-86:

"* * * Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing pursuant to Ill. Rev. Stat., c 38, § 104—2 (1963). [Citation.] The Supreme Court of Illinois held that the evidence here was not sufficient to require a hearing in light of the mental alertness and understanding displayed in Robinson's 'colloquies' with the trial judge. * * * But this reasoning offers no justification for ignoring the unconstradicted testimony of Robinson's history of pronounced irrational behavior. While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. [Citation.]"

In our opinion, the trial court erred in failing to order a competency hearing under the facts presented in this case.

For the foregoing reasons the judgment of the Circuit Court of Randolph County is reversed and the cause is remanded with directions that the plea be stricken and for further proceedings consistent with this opinion.

Reversed and remanded.

EBERSPACHER, P. J., and CREBS, J., concur.