(No. 67570.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HECTOR REUBEN SANCHEZ, Appellant.

*Opinion filed October 25, 1989.*

418

Jed Stone and Susan Valentine, of the Law Offices of Jed Stone, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Joan G. Fickinger, Assistant Attorneys General, of Chicago, of counsel), for the People.

CHIEF JUSTICE MORAN delivered the opinion of the court:

In the direct appeal of the death sentence of defendant, Hector Reuben Sanchez, this court affirmed his convictions for the aggravated kidnapping, rape, deviate sexual assault and murder of Michelle Thompson and the attempted murder of Rene Valentine. (115 Ill. 2d 238.) Also affirmed was defendant's death sentence for Thompson's murder and the concurrent terms of 60 years for the other offenses. However, this court stayed the death sentence because the circuit court of Lake County dismissed defendant's amended section 2—1401 (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) petition (hereinafter, petition) to vacate his convictions without conducting an evidentiary hearing. The case was remanded to the trial court with directions to conduct an evidentiary hearing on defendant's petition. 115 Ill. 2d at 287.

The trial court held the evidentiary hearing on August 2, 1988, and again dismissed defendant's petition. The instant appeal ensued.

It should be noted that defendant's appeal was not taken pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1), but rather was taken pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). The purpose of the petition is to bring before the court facts which had they been known at trial would have prevented the entry of the contested judgment. (See,

*e.g., People v. Hinton* (1972), 52 Ill. 2d 239, 243.) Although the petition is usually characterized as a civil remedy, its remedial powers extend to criminal cases. (See, *e.g.*, Ill. Ann. Stat., ch. 110, par. 2—1401, Historical & Practice Notes, at 614 (Smith-Hurd 1983).) When examining a trial court's ruling on such a petition, the appropriate standard of review is whether the trial court abused its discretion. (*In re Petition of the Village of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 544.) Absent an abuse of discretion the trial court's determination will not be disturbed.

The basis of defendant's petition was a newly discovered statement made by Oscar Cardona Cartegena, a prisoner in the Wisconsin penal system.

Defendant raises three issues relating to this newly discovered statement: (1) whether the trial court abused its discretion in denying the admission of the investigator's testimony regarding Cartegena's statement on hearsay grounds; (2) whether the trial court abused its discretion in not bestowing immunity upon Cartegena; and (3) whether the trial court abused its discretion by refusing to allow an offer of proof regarding opinion testimony as to the credibility of Cartegena's statement.

After defendant was convicted of the crimes involving the abduction and murder of Thompson and the attempted murder of Valentine, he was transferred to the Milwaukee County, Wisconsin, jail to await trial on an unrelated murder charge. Cartegena was also incarcerated in the same jail. While there, Cartegena allegedly told a Catholic nun, who spiritually attended to inmates at the jail, that he had witnessed the abduction of Thompson and shooting of Valentine. Cartegena claimed that defendant was not one of the persons who committed those offenses. Upon learning of this report, defense counsel sent an investigator, Don Berlin, to talk to Cartegena, who eventually gave Berlin a statement.

At the evidentiary hearing, defendant sought to introduce this statement. Cartegena took the stand but invoked his fifth amendment right against self-incrimination. The trial court inquired of Cartegena as to the scope of his invocation. Cartegena said that he would not answer any questions relating to his presence at D. Laney's nightclub in Gurnee, Illinois, on February 3, 1984, because he believed that the evidence may incriminate him.

Defendant then sought a grant of immunity for Cartegena but the State declined to grant Cartegena immunity. The trial court found that the State's denial of immunity did not violate defendant's constitutional rights.

Defendant next sought to introduce the statement by having the investigator testify about the statement. The State objected on hearsay grounds. Before the trial court ruled on the objection, defendant made an offer of proof.

According to the offer of proof, Cartegena, while housed at the Milwaukee County jail and in the presence of his attorney, gave a statement to Berlin, which Berlin memorialized some time after their meeting. Cartegena allegedly told Berlin that on February 3, 1984, he was in D. Laney's parking lot to see Thompson. He had previously met her at the Coconut Grove Lounge in Milwaukee, Wisconsin, and had given her his sister's phone number. Thompson had called Cartegena and asked him to meet her at D. Laney's on February 3, 1984. He claimed to have been in the parking lot from 11:45 p.m. until 12 a.m. on the night of the murder. Cartegena "noticed that [Thompson] kept coming in and out of the tavern with 'this dude.' " (The description fit Valentine (see 115 Ill. 2d at 283).)

While in the parking lot, Cartegena stated, he saw a dark-blue van with three white persons and one black male pull up near his car. He then saw two black persons drive up in a tan car with a white top. (The description of the driver fit Peters, a codefendant (see 115 Ill. 2d at

283).) Thompson and "the dude" were still going in and out of the tavern.

The men from the van grabbed "the dude" and pushed him into the van. At the same time, the driver of the tan car ran after Thompson and dragged her to the van. A few moments later, Thompson, who was now "totally nude," was taken from the van and put into the car. The two black men in the tan car then drove off. A few moments later, one of the white men and the black man in the van took "the dude" out of the van and shot him at very close range. Cartegena stated that "[the dude] was shot twice very quickly and fell down. Then they tried to shoot him again, but somehow he got up and ran across the street." At this point Cartegena left the parking lot.

Also, according to the offer of proof, Berlin asked Cartegena if he had seen defendant at the Milwaukee County jail, and he replied that he had. Berlin then asked Cartegena if defendant was one of the men he had seen at D. Laney's on the night of February 3, 1984. Cartegena replied that he had not seen defendant that night. The written offer of proof concluded that Cartegena's report had "objective believability."

At the conclusion of arguments on the offer of proof, the trial court sustained the objection and denied the admission of Berlin's testimony as to Cartegena's statement because it was hearsay. The trial court did, however, allow Berlin to testify to events concerning his conversation with Cartegena and Cartegena's attorney and to what he observed while at the jail.

Berlin took the stand again and defense counsel attempted to establish the credibility of Cartegena's statement. The State objected. Defendant then sought to make an offer of proof as to the credibility of Cartegena's statement. The State objected and the trial court denied the offer of proof. The trial court stated that

Berlin's opinion regarding the credibility of Cartegena's statement was not admissible and that there was no reason for an offer of proof as to Berlin's opinion.

Defendant argues that the trial court erred in denying the admission of Berlin's testimony of Cartegena's statement on hearsay grounds. Defendant asserts that Berlin should have been permitted to testify about the statement because it was a statement against Cartegena's penal interest. The State argues that Cartegena's statement was not against his penal interest.

Defendant concedes that Berlin's testimony was hearsay. As a general rule, hearsay evidence is not admissible unless it falls within an exception to the rule. (See, *e.g.*, *Chambers v. Mississippi* (1973), 410 U.S. 284, 298-99, 35 L. Ed. 2d 297, 310-11, 93 S. Ct. 1038, 1047-48; E. Cleary & M. Graham, Handbook of Illinois Evidence §801.1, at 505 (4th ed. 1984); R. Ruebner, Illinois Criminal Trial Evidence 109 (1986).) Defendant argues that Cartegena's statement falls within an exception to the hearsay rule as a statement against penal interest and, therefore, Berlin's testimony concerning that statement should have been admitted.

A hearsay statement may be admitted if it is against the declarant's penal interest, but the statement must bear sufficient indicia of reliability. (*Chambers*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.) *Chambers* established four factors to help determine the reliability of a hearsay statement: (1) the statement was spontaneously made to a close acquaintance shortly after the crime occurred; (2) the statement is corroborated by other evidence; (3) the statement is self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. *Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49. See also *People v. Bowel* (1986), 111 Ill. 2d 58, 66-67.

At oral arguments before this court, defendant admitted that Cartegena did not incriminate or implicate himself in the commission of any crime related to this case. Additionally, the statement was not made until 18 months after the commission of the crime. Moreover, under the facts of this case, we cannot say that Cartegena's alleged statement to the Catholic nun was the equivalent of a spontaneous statement to a close acquaintance. Accordingly, Cartegena's statement was not a declaration against interest, and assuming it were, it lacks "sufficient indicia of reliability." Consequently, the trial court did not abuse its discretion in denying the admission of Berlin's testimony on hearsay grounds.

Next, defendant contends that the trial court erred in not granting immunity to Cartegena. The State responds that immunity may only be granted by the prosecutor, not the court. The State argues that since immunity was properly denied, the court was powerless to compel a grant of immunity.

As a general rule, a grant of immunity does not lie within the province of the judiciary. It may only be given by virtue of statutory authority. (Ill. Rev. Stat. 1987, ch. 38, par. 106—1.) As such, a trial court has no inherent power to grant immunity; that power belongs to the State. (*People v. Foster* (1987), 119 Ill. 2d 69, 89-90.) When defendant sought a grant of immunity for Cartegena, the State opposed it. Under the circumstances of this case, the trial court could not compel the State to grant Cartegena immunity. Accordingly, the trial court did not abuse its discretion by not granting the requested immunity.

Defendant suggests, however, that "due process demands that Cartegena be granted immunity in this case," because his testimony would "entirely exculpate" him. Defendant relies on two Federal cases (*Virgin Islands v. Smith* (3d Cir. 1980), 615 F.2d 964, and *United*

*States v. Herrera-Medina* (7th Cir. 1988), 853 F.2d 564) as support for this proposition; however, that reliance is misplaced. Those decisions are not binding upon the courts of this State (*People v. Stansberry* (1971), 47 Ill. 2d 541, 544-45), and defendant conceded, at oral arguments before this court, that there is a split in the Federal courts regarding judicial grants of immunity. See, *e.g.*, *Herrera-Medina*, 853 F.2d at 568 (citing cases).

More telling, however, is the fact that Cartegena's testimony does not "entirely exculpate" defendant. At best, it merely conflicts with the substantial evidence of defendant's guilt, including the testimony of the victim of the attempted murder, the testimony of a codefendant in the crimes, and the physical evidence.

Finally, defendant maintains that he was denied a fair hearing because the trial court refused to allow him the opportunity to make an offer of proof regarding the independent credibility of Cartegena's statement. The State contends that the offer of proof was properly denied as being irrelevant.

An offer of proof serves two primary functions: informing the trial court and opposing party of the nature and substance of the evidence expected to be introduced and preserving that evidence for appellate review. (See, *e.g.*, *Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 491.) The purpose of an offer of proof is to enable the court to decide a case on its merits. *People v. Lynch* (1984), 104 Ill. 2d 194, 202.

An offer of proof raises questions concerning the relevance, materiality and competence of the proffered evidence. (*People v. Brocamp* (1923), 307 Ill. 448, 454.) The party making the offer of proof has the burden of demonstrating the relevance, materiality and competence of the tendered evidence. *People v. Stefanov* (1981), 93 Ill. App. 3d 85, 87.

Whether Cartegena's statement had "objective believability" was a question of fact to be determined by the trier of fact, not the witness. It is axiomatic that it is for the trier of fact to determine the credibility and weight of the evidence and to draw reasonable inferences from that evidence. (See, *e.g.*, *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.) Thus, Berlin's opinion about the credibility of Cartegena's statement was irrelevant and immaterial, as that determination was not his to make. We note that the trial court had presided over the defendant's trial and heard the evidence for and against a finding of guilt. Consequently, the trial court was fully aware of the evidence necessary to make the required credibility determination at issue here. Accordingly, the trial court did not abuse its discretion or otherwise err in denying the offer of proof.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed. Accordingly, the stay of defendant's death sentence is vacated.

The clerk of this court is directed to enter an order setting Wednesday, March 21, 1990, as the date on which the sentence entered in the circuit court of Lake County is to be carried out. Defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 119—5). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

It appears that the decisional law supports the holding of the majority opinion. However, I have a gnawing curiosity as to what Cartegena's testimony would have

revealed. If this were not a capital case, I would be content to follow the law as stated in the opinion. Since this case does involve a penalty of death, we should have the benefit of all information available. I therefore dissent.

Section 106—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 106—1) provides that the court, on motion of the State, may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony he may be compelled to produce. When this court remanded this case (115 Ill. 2d 238) for an evidentiary hearing on the section 2—1401 petition (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401), it was my hope that if Cartegena asserted his fifth amendment privilege at the evidentiary hearing, the State would move to grant him immunity. For some reason the State refused to do so.

Instead of affirming the trial court's denial of the section 2—1401 petition, I would favor remanding this cause to the trial court, with directions that if the State does not move to grant Cartegena immunity, the defendant's sentence of death be vacated and that he be sentenced to a term of imprisonment. If immunity were to be granted, the court could then evaluate the testimony given under the grant of immunity and determine its sufficiency for the purpose of determining whether a new trial is warranted.

JUSTICE CLARK joins in this dissent.