THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LYNDA SMITH, Defendant-Appellant.

Fourth District   No. 4—92—0767

Opinion filed December 9, 1993.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 1992, the State charged defendant, Lynda Smith, an inmate at Dwight Correctional Center, with aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(6)) and criminal damage to State-supported property in excess of $500 (Ill. Rev. Stat. 1991, ch. 38, par. 21—4(a)). Following a jury trial, defendant was convicted of both offenses. In September 1992, the trial court sentenced her to an extended-term sentence of 10 years in prison and directed that she serve that sentence consecutively to all other sentences she was then serving. Defendant appeals, raising as her sole contention that because a *bona fide* doubt of her fitness to stand trial was raised, the trial court erred by failing to order a fitness hearing.

We affirm.

Because defendant does not contest the sufficiency of the evidence, we will discuss the facts of this case only as they pertain to defendant's contention that a *bona fide* doubt existed at trial of her fitness to stand trial.

On May 21, 1992, defendant made her first appearance in court on these charges. Judge Charles E. Glennon, who presided at that hearing, granted defendant's request to be excused from the courtroom and then stated the following:

"For the record, I granted her request for the following reasons: I have recently within the last probably 90 days completed a jury trial involving [defendant]. She was charged with aggravated battery. She is probably the single most consistently

disruptive defendant I have had in my courtroom in fifteen years [or] sixteen years. She typically will not let the court conclude any proceedings involving her without causing a disruption. At her recent jury trial, she refused to enter the courtroom. She defecated in the holding room. I think the charge *** which I have not had a chance to read to her, which is criminal damage to State-supported property, may have been a window of a correctional vehicle that she allegedly kicked out while leaving the courthouse sometime during these trial proceedings. She is loud, she is profane. She is presently in the Dwight Mental Health Unit, *although she has been found, at least fairly recently, fit to stand trial.* *** I believe the psychiatrist's conclusion that she is much more manipulative than she is suffering from any type of mental illness. I think the conclusion was she turns it off and on at will. And if she can disrupt courtroom proceedings, she will do that. I am making the record because I think that the threshold for how much disruption we can tolerate from [defendant] has to be adjusted based upon a record in her most recent felony case earlier in 1992 of being aggressively disruptive repeatedly time after time in the courtroom. She gets louder, she gets more profane, she starts shouting, she carries that into the holding room, she shouts, she curses, she sings from the holding room." (Emphasis added.)

On May 29, 1992, Judge Glennon attempted to arraign defendant and stated the following:

"THE COURT: I am just saying as soon as you were coming into court, the switch got turned on and you started yelling.

THE DEFENDANT: Sir, that ain't got nothing to do with this case.

THE COURT: Struggling with the officers as they brought her into court, which has been part of an ongoing display that generally occurs either directly in the court, or just outside court."

Defendant thereafter filed a motion for substitution of judge, which was granted, and the case was then assigned to Judge Harold Frobish. On June 24, 1992, Judge Frobish conducted a hearing on two defense motions. He denied the first motion—for a change of place of trial—and then stated the following:

"THE COURT: There is a second motion, a Motion for Permission to Employ Psychiatrists, and I have read that motion and the purpose of this motion is to see if the defendant is fit to stand trial. Would that be correct, [defense counsel]?

[Defense Counsel]: Yes, and I would like to add one item that is not included in the motion. She is a resident of the mental health unit at the correctional center and I believe has been there the entire time [she has] been in Dwight.

THE COURT: [Prosecutor], do you have any remarks before I make some comments?

[The Prosecutor]: Is he asking for fitness or sanity or both?

[Defense Counsel]: I think *** I should ask for both, but certainly for fitness to stand trial when you're considering what happened at the prior trial. *** I don't know to what extent that would have been related to mental problems and [to] what extent it may not have been.

[The Prosecutor]: I wouldn't have any position.

THE COURT: In a recent case that was referred [to] by [defense counsel], 91—CF—93, People v. Lynda Smith, the defendant *** moved to employ a psychologist to examine the defendant to determine if she could stand trial.

That motion was granted August 20 of 1991, and I was under the impression the State also moved for an examination, but in any event, I note the docket entry of February 18, 1992, shows that the defendant appeared in custody, [and the prosecutor] appeared for the People.

The Court noted that the court-ordered psychiatric exam to determine fitness to stand trial having been conducted, the court finds the defendant fit to stand trial and cause was then set for jury trial on February 27 of 1992 and the case was tried by a jury on that date.

This being June 24th, 1992, a very small lapse of time has occurred since the last examination was conducted of the defendant and it is true from reading the docket entry here that the defendant was a problem in 91—CF—93, and from reading the docket entry in 92—CF—92, the case that I'm responsible for, it appears that the defendant was a problem, but a problem does not equate with fitness to stand trial and I have not seen any reason here since I have been involved with the case to grant the motion. *** I further find that since *** that subject has so recently been taken up, and the defendant, *because she was so recently found to be fit to stand trial, a further reason exists to deny the motion.*

So the defendant's Motion for Permission to Employ Psychiatrist is denied." (Emphasis added.)

In July 1992, before starting defendant's jury trial, Judge Frobish and both counsel discussed defendant's continuing wish not to appear in court. Judge Frobish referred to a letter defense counsel had sent him two weeks earlier, advising the court of counsel's conversation with defendant about whether she wished to attend her trial. Judge Frobish quoted from the letter as follows:

> "She advised me of her opinions of the judicial system in Livingston County and she came to the conclusion that her attendance would not, as a practical matter, help her. She therefore told me that she does not desire to attend the trial and I am so advising you by this letter."

Defense counsel concurred with her request to be absent from her trial, and the trial court granted that request, explaining his reasoning in part as follows:

> "The way she conducts herself in open court *** would be extremely prejudicial. I have some acquaintance with this defendant when she was prosecuted in another criminal case [and] my trial was disrupted a number of times when she was across the hall. *** In fact, I was instructing the jury in a complicated civil case, and we simply had to stop the instruction of the case because she was screaming *** profanities so loudly the jury could not hear what I was saying in this room.
> ***
> *** *I think she's competent to stand trial, but she has an extreme dislike for the judicial system and she is very intent on showing that dislike anytime she's in the courthouse.*" (Emphasis added.)

Section 104—11(a) of the Code of Criminal Procedure of 1963 (Code) reads in pertinent part as follows: "When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." (Ill. Rev. Stat. 1991, ch. 38, par. 104—11(a).) "A defendant is considered unfit to stand trial if, because of a mental or physical condition, he is unable to understand the nature and the purpose of proceedings against him or to assist in his defense." *People v. Eddmonds* (1991), 143 Ill. 2d 501, 512, 578 N.E.2d 952, 957; see Ill. Rev. Stat. 1991, ch. 38, par. 104—10.

Defendant argues that the record demonstrates that a *bona fide* doubt for fitness to stand trial was raised at trial and that the trial court therefore committed reversible error by failing to order a fitness hearing. In support of this argument, defendant cites the decision of the First District Appellate Court in *In re E.V.* (1989), 190 Ill. App. 3d 1079, 1081-82, 547 N.E.2d 521, 522, as follows:

"Among the factors to be considered in determining an accused's fitness for trial are defense counsel's assertion that the accused is unable to cooperate in his own defense, prior treatment of a mental disability and the accused's demeanor at trial. [Citations.] The presence of more than one of these factors indicates that an accused is unfit to stand trial."

Although we agree with the First District Appellate Court that the trial court should *consider* these factors in determining an accused's fitness, we think an appellate court's statement that the presence of more than one of these factors *indicates* that an accused is unfit to stand trial usurps the role of the trial court. Whether a *bona fide* doubt has been raised rests within the discretion of the trial court, and a court of review will reverse that decision only if the trial court has abused its discretion. (See *People v. Thomas* (1993), 246 Ill. App. 3d 708, 713-14, 616 N.E.2d 695, 699.) The supreme court in *Eddmonds* wrote the following:

"Relevant factors which a trial court may consider in assessing whether a *bona fide* doubt of fitness exists include a defendant's 'irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.' (*Drope v. Missouri* (1975), 420 U.S. 162, 180, 43 L. Ed. 2d 103, 118, 95 S. Ct. 896, 908.) The representations of defendant's counsel concerning the competence of his client, while not conclusive, are another important factor to consider. (*Drope v. Missouri*, 420 U.S. at 177 n.13, 43 L. Ed. 2d at 116 n.13, 95 S. Ct. at 906 n.13.) It is undisputed, however, that there are 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.' *Drope v. Missouri*, 420 U.S. at 180, 43 L. Ed. 2d at 118, 95 S. Ct. at 908." *Eddmonds*, 143 Ill. 2d at 518, 578 N.E.2d at 959.

We hold that this record fails to demonstrate that the trial court abused its discretion in not finding that a *bona fide* doubt of defendant's fitness to stand trial existed; therefore, the court did not err in declining to conduct a fitness hearing.

Evidence, as in the present case, of extreme disruptive behavior and a sociopathic personality does not compel the conclusion that a *bona fide* doubt exists as to a defendant's fitness to stand trial. (See *People v. Hinton* (1971), 132 Ill. App. 2d 409, 414, 270 N.E.2d 93, 96 ("fact that defendant may possess a sociopathic personality and suffer from psychiatric and social disturbances does not create a *bona fide*

doubt of his [fitness to stand trial]"), *aff'd* (1972), 52 Ill. 2d 239, 287 N.E.2d 657.) As did the trial court, we find particularly compelling that defendant had been found fit to stand trial in an unrelated case just a few months before the proceeding in the present case. We agree with the following from *People v. Gibson* (1974), 21 Ill. App. 3d 692, 695, 315 N.E.2d 557, 560:

> "[A]n individual may be competent to stand trial despite the fact that he is mentally disturbed or defective and requires psychiatric treatment. [Citation.] In [determining] whether a bona fide doubt exists, courts have taken into consideration such factors as a defendant's 'lucidity' and his comprehension of the significance of the proceedings against him. [Citation.] In addition, reliance has been placed upon the fact that a defendant was found competent following an evidentiary hearing shortly before a request for a second mental examination had been made."

In support of the trial court's reliance upon the earlier hearing at which defendant was found fit to stand trial, we note that the court was presented with no new facts indicating that defendant's condition had since worsened, suggesting thereby that the previous fitness determination was no longer valid. We also find significant the absence in the record of any statement by defense counsel of defendant's inability to consult meaningfully with him. Indeed, the one indication in the record regarding their communications—the letter from counsel to which Judge Frobish referred concerning defendant's wish not to appear in court—implies that they had no difficulty understanding each other. We agree with the trial court that defendant's hostility and misbehavior in the courthouse could be attributable to her belief that the trial court proceedings were unfair, as opposed to her being a person utterly out of control, *incapable*, not just *unwilling*, to understand the charges against her or to assist in her own defense.

As a last matter, we note that one of the items defendant cites on appeal is a presentence report prepared months after the hearings at which the court and counsel engaged in discussions pertinent to defendant's fitness to stand trial. The presentence report contains findings by a psychiatrist that defendant claims support her argument that a *bona fide* doubt of her fitness to stand trial existed. However, we decline to consider that presentence report in support of defendant's argument because this court reviews rulings of the trial court based upon information known to the trial court *at the time* those rulings were made. It would be manifestly unfair for this court to re-

verse a judgment of the trial court based upon information presented to that court long after the fact.

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.