NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                  Docket No. 80130--Agenda 8--May 1996.

        THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHN R.

                           SANDHAM, Appellant.

                    Opinion filed November 21, 1996.

                                    

     JUSTICE HEIPLE delivered the opinion of the court:

     Defendant, John R. Sandham, was convicted after a bench trial

in the circuit court of Livingston County of one count of

aggravated criminal sexual abuse (720 ILCS 5/12--16 (West 1992))

and sentenced to a five-year term of imprisonment. The appellate

court affirmed (276 Ill. App. 3d 86), and this court subsequently

granted defendant's petition for leave to appeal (155 Ill. 2d R.

315). Defendant argues before this court that his conviction must

be reversed and a new trial ordered because (1) the trial court

failed to secure defendant's written jury waiver and his oral

waiver was not made understandingly; (2) the trial court failed to

conduct a fitness hearing when a bona fide doubt as to defendant's

fitness arose and when evidence was elicited that defendant may

have been taking psychotropic medication; (3) hearsay evidence was

improperly admitted; and (4) the evidence was insufficient to find

defendant guilty beyond a reasonable doubt. For the reasons

expressed below, we reverse defendant's conviction and remand for

a new trial based upon our determination that a bona fide doubt as

to defendant's fitness arose following which no fitness hearing was

held. Accordingly, we do not reach defendant's remaining arguments.

     In deciding this cause, we recount only those facts necessary

to disposing of the issues raised in this appeal.

                          I. Fitness of Defendant

     Defendant's dual contentions regarding his fitness to stand

trial are: (1) that a bona fide doubt regarding his fitness arose

which required the trial court to, sua sponte, conduct a fitness

hearing pursuant to section 104--11 of the Code of Criminal

Procedure (725 ILCS 5/104--11 (West 1992)); and (2) that evidence

of his ingestion of psychotropic medications at or about the time

of trial required the court to conduct a fitness hearing pursuant

to section 104--21(a) of the Code (725 ILCS 5/104--21(a) (West

1992)). Insofar as the trial court never held a fitness hearing,

defendant contends that his conviction must be reversed. The State

counters that defendant has waived his fitness arguments by failing

to raise them either at trial or in his post-trial motions. The

right to be fit for trial, however, is fundamental. People v.

Eddmonds, 143 Ill. 2d 501, 512-13 (1991). Accordingly, prosecuting

a defendant where there is a bona fide doubt as to that defendant's

fitness renders the proceeding fundamentally unfair and we review

this contention under the plain error rule. 134 Ill. 2d R. 615(a).

     Due process bars prosecuting or sentencing a defendant who is

not competent to stand trial. Eddmonds, 143 Ill. 2d at 512-13.

Fitness to stand trial requires that a defendant understand the

nature and purpose of the proceedings against him and be able to

assist in his defense. 725 ILCS 5/104--10 (West 1992). Although a

defendant's fitness is presumed by statute (725 ILCS 5/104--10

(West 1992)), the circuit court has a duty to order a fitness

hearing, sua sponte, any time a bona fide doubt arises regarding a

defendant's ability to understand the nature and purpose of the

proceedings or assist in his defense. Whether a bona fide doubt as

to a defendant's fitness has arisen is generally a matter within

the discretion of the trial court. People v. Murphy, 72 Ill. 2d

421, 431 (1978).

     Here, defense counsel never requested a fitness hearing

pursuant to section 104--11 of the Code and defendant maintains

that the trial court abused its discretion in not recognizing, sua

sponte, that a bona fide doubt as to defendant's fitness existed.

In support defendant points to various portions of the record which

he claims raised a bona fide doubt as to his fitness prior to trial

or, in the alternative, prior to sentencing.

     The first suggestion that there may have been a bona fide

doubt as to defendant's fitness occurred on April 22, 1993, when

defendant's public defender made an oral motion to the court

requesting permission to engage a psychiatrist to determine whether

defendant was fit to stand trial. The court granted leave and

instructed defense counsel to prepare a written motion and proposed

order to that effect. However, on that same date a private attorney

appeared and was substituted as counsel for defendant. Once the

public defender was discharged, the psychiatric evaluation motion

that had been orally allowed by the judge was never referred to or

acted upon by the newly retained counsel. The record provides no

explanation for this.

     The case was subsequently set for a bench trial on May 28,

1993. However, on May 14, 1993, less than one month after the

public defender's request to engage a psychiatrist, another event

indicating that there was a bona fide doubt as to defendant's

fitness occurred. On that date, defense counsel filed a motion to

continue the trial indefinitely because defendant had been unable

to cooperate with defense counsel except with difficulty up through

May 4, 1993, and because defendant had been committed to the

BroMenn psychiatric ward. The court granted the motion and reset

the trial for July 16, 1993, which was later continued to September

13, 1993. The record is silent as to the purpose, duration or

treatment provided defendant in the psychiatric ward.

     Not silent, however, was the defendant. On March 30, 1993, and

July 8, 1993, defendant sent separate letters to the trial judge,

both of which defendant argues evidence a bona fide doubt as to his

fitness. The March 30 letter, which preceded the public defender's

request for a psychiatric evaluation, asked the court to "give me

14 years straight time. No good time or supplemental. 14 straight

years. THEN I CAN PROCEED WITH MY REAL LIFE AND HAVE NO REGRETS

ABOUT ENDING THIS ONE." (Emphasis added.) While the defendant's

reference to his "real life" may have been odd, the letter was

respectful in tone. This is in marked contrast to the letter of

July 8, 1993, which was written after defendant's commitment to the

BroMenn psychiatric ward. The July 8 letter was exceedingly hostile

and profane, describing in explicit terms the sexual aggressions

defendant associated with prison life. It further explained, rather

incoherently, that the judge sends "innocents" such as defendant to

prison whereupon the judge collects his paycheck and absolves this

sin at the Lutheran church on Sundays. The letter then curses the

judge using a variety of expletives and laments that defendant will

be the next person to go to prison because the judge does not use

his position and power to stop it. In a similar vein, we observe

the judge's statement in the record that defendant also made

several threatening phone calls to him during the time period

defendant was writing these letters.

     Defendant was eventually discharged from the psychiatric ward,

whereupon a bench trial followed and defendant was convicted of

aggravated criminal sexual abuse (720 ILCS 5/12--16 (West 1992)).

Defendant argues that during the ensuing March 1, 1994, sentencing

hearing, additional testimony transpired which raised a bona fide

doubt as to defendant's fitness. First defendant notes the

testimony of the complainant's mother, who testified that she knew

the defendant personally and that the defendant, "wasn't all the

way there *** [that there] would be days he would be okay, but

there would be other days he'd run outside and start praying to God

real loud. *** There was times he never did act normal."

     Defendant next refers this court to his father's testimony at

the sentencing hearing regarding the Carl Pfeiffer Treatment

Center's psychological evaluation of defendant, which was conducted

prior to the sentencing hearing. Though the trial court was

provided a copy of and considered the evaluation at the sentencing

hearing, the evaluation is not contained in the record. We thus

consider only those references to the evaluation found in the

record.

     Defendant's father testified that the evaluation suggested

that defendant had a slight chemical imbalance and that defendant

had a slight case of schizophrenia. The Pfeiffer Center recommended

a three-month treatment regimen after which defendant would be

reevaluated. Part of the difficulty in evaluating defendant,

according to defendant's father, was the medication prescribed to

defendant at the Menard Correctional Center psychiatric ward, which

included the psychotropic drugs lithium, Prolixin and Ativan.

     Finally, defendant refers this court to the colloquy between

the defendant, trial court and defense counsel at the close of the

sentencing hearing. After the State requested a maximum nonextended

term sentence, defense counsel pleaded with the court to sentence

defendant to probation and psychological treatment instead of

prison time. This plea was interrupted by defendant, who stated,

"Cut my brain out. You'll be sorry, and I won't do nothing. I'll be

brain dead." Defense counsel then observed for the court that "you

can tell from the way he talks that this is something that we need

to address." The court then ascertained from defense counsel that

defendant was currently taking the prescribed psychotropic

medication, after which the defendant stated, "I've already got my

brain cut apart spiritually. Do you know what I mean? I know what

I mean." The trial court then recessed for 15 minutes to read the

presentence report.

     Upon returning to the bench, the judge detailed why he found

the defendant guilty and then stated as follows, with periodic

interruptions from the defendant:

               "THE COURT: The issue I have now is whether you are

          competent to proceed with sentencing, whether you are

          capable of participating in this. YOU DON'T EVEN SEEM TO

          UNDERSTAND WHAT'S GOING ON. YOU ARE MAKING COMMENTS THAT

          ARE OBVIOUSLY INAPPROPRIATE. *** I DON'T FULLY UNDERSTAND

          THE NATURE OF MENTAL ILLNESS. I DON'T THINK ANYONE DOES--

          EVEN PSYCHIATRISTS AND PSYCHOLOGISTS.

               The one thing I do know and am concerned about [is]

          that since '90 things have gotten progressively worse ***

          since getting out of prison *** he's been convicted of

          disorderly conduct, trespass, retail theft, and also been

          up on sentencing for trespass to real property.

               THERE ARE VARIOUS REASONS FOR SENTENCING, JOHN.

          WHETHER YOU UNDERSTAND WHAT I'M SAYING OR NOT I AM NOT

          SURE; but the important factors are doing things that

          could rehabilitate you. I don't know what that is. ***

               But although on the one hand sentences are many

          times to try to rehabilitate people, and on the other

          hand they are for society's protection, I'm trying to

          look at it from both sides.

               DEFENDANT: I DON'T SEE ANY WAY TO PROTECT ME FROM

          THIS SOCIETY. ***

               THE COURT: Considering all the evidence at trial

          [and] the presentence report which is very thorough, I am

          going to sentence you, John, with credit for time served

          to five years in the Department of Corrections. I feel

          that's appropriate; and on the misdemeanor, I'll just

          sentence you to--

               DEFENDANT: I TALKED TO MY MOTHER.

               THE COURT: Credit for time served. You'll be

          eligible in all likelihood to get out--

               DEFENDANT: You don't know a lie from the truth

          because you are sending me up, and I didn't do anything.

          ***

               THE COURT: *** Am I here to help [defendant],

          protect society or both? *** I'M NOT DISAGREEING THAT

          SENDING A PERSON TO PRISON WITH MENTAL HEALTH PROBLEMS IS

          [NOT] GOING TO HELP HIM. IT MIGHT; IT MIGHT NOT. ***

               Also a concern I have is the protection of the

          public. ***

               DEFENDANT: I'VE GOT THREE ALBUMS ON THE TOP OF THE

          CHARTS AND COMIC BOOKS ALL OVER. (Emphasis added.)

Defendant argues that his comments at sentencing were so unrelated

to the proceedings at hand that they raised a bona fide doubt as to

defendant's fitness. Moreover, defendant contends that even the

trial judge realized this when he stated that defendant did not

seem to know what was going on and that he did not know whether

defendant even understood what the trial judge was saying.

     The State counters each of defendant's individual suggestions

of unfitness with a specific case holding that a similar

circumstance did not raise a bona fide doubt as to fitness. See

People v. Eddmonds, 143 Ill. 2d 501, 519 (1991) (assertion by

counsel of defendant's unfitness does not, in and of itself, create

bona fide doubt); People v. Skorusa, 55 Ill. 2d 577, 582 (1973)

(granting defense counsel's request for a psychiatric examination

does not raise a bona fide doubt); People v. Smith, 253 Ill. App.

3d 948, 954 (1993) (hostile behavior on the part of defendant not

necessarily reflective of a person utterly out of control or

incapable of understanding the charges against him). The State

further argues that each of defendant's letters are capable of a

construction that does not raise a bona fide doubt as to

defendant's fitness and argues likewise regarding the various

irrational statements made by the defendant at his sentencing

hearing. Accordingly, the State asks this court to conclude that

the trial court did not abuse its discretion in not determining

that there was a bona fide doubt as to defendant's fitness. This,

however, we cannot do.

     Summarized briefly, the trial court was aware of the following

episodes and testimony relating to the issue of whether there was

a bona fide doubt as to defendant's fitness: (1) the public

defender's oral motion, which the trial court granted, to obtain a

psychiatric evaluation to determine defendant's fitness; (2) the

continuance of the trial due to defendant's inability to cooperate

with defense counsel except with difficulty and the defendant's

ensuing commitment to a psychiatric ward; (3) defendant's two

letters to the court which were complimentary and exceedingly

hostile, respectively, and which spoke of defendant beginning his

"real life" after sentencing; (4) defendant's threatening phone

calls to the trial judge; (5) the testimony of complainant's mother

that defendant was not "all the way there" and would sometimes run

outside and start praying loudly to God; (6) the Pfeiffer Center

evaluation testimony which suggested that defendant had a slight

chemical imbalance and was slightly schizophrenic; (7) defendant's

ingestion of psychotropic medications at or about the time of trial

and/or sentencing; and (8) defendant's irrational outbursts during

the sentencing hearing regarding his brain being cut out, his

conversation with his mother, his "top of the charts" albums and

his comic books.

     The State's attempt to explain away the individual episodes

and testimony detailed above, as if each occurred in a vacuum,

cannot be countenanced. As a reviewing court, we will not ignore

the impact of these events and testimony when considered in

relation to each other and the record as a whole. The State does

not, and indeed cannot, cite to precedent holding that so many and

varied suggestions that a defendant might be unfit did not raise a

bona fide doubt as to the defendant's fitness.

     While it is correct that a defendant may be competent to stand

trial even though his mind is otherwise unsound and that some doubt

as to a defendant's fitness is not necessarily enough to warrant a

fitness hearing (Eddmonds, 143 Ill. 2d at 513, 519), a trial

court's discretion in so concluding is not unbridled. We hold that

the trial court abused its discretion in not ruling, sua sponte,

that the instant events and testimony combined to raise a bona

fide doubt as to defendant's fitness to stand trial or be

sentenced. Indeed, we observe that the trial judge himself appears

to have recognized a bona fide doubt regarding defendant's fitness

when he stated that defendant "[did not] even seem to understand

what's going on" and "whether you understand what I am saying or

not I am not sure." While it could well be argued that a bona fide

doubt as to defendant's fitness arose prior to these observations,

there is no question that the trial judge had no discretion and was

required to conduct, sua sponte, a fitness hearing at the point he

questioned defendant's capacity to comprehend what was transpiring

at the sentencing hearing. 725 ILCS 5/104--11 (West 1992). This the

court did not do.

     We note that all the events and testimony cited by the

defendant, including those occurring during the sentencing hearing,

are relevant to defendant's fitness at the time of trial. We thus

hold that the court's failure to conduct a fitness hearing pursuant

to section 104--11 requires that defendant's conviction be vacated

and the cause remanded for a new trial. Only in this manner can it

be ensured that defendant was not convicted in violation of the due

process clause of the fourteenth amendment (U.S. Const., amend.

XIV), which provides that a defendant is unfit to stand trial or be

sentenced if unable to understand the nature and purpose of the

proceedings against him. Medina v. California, 505 U.S. 437, 439,

120 L. Ed. 2d 353, 359, 112 S. Ct. 2572, 2574 (1992).

     Insofar as we are remanding this cause for a new trial due to

the trial court's failure to conduct a fitness hearing pursuant to

section 104--11, we need not pass on defendant's contention that he

is also entitled to a new trial pursuant to section 104--21(a).

Defendant's section 104--21(a) argument contends that he is

entitled to a new trial because the trial court failed to conduct

a fitness hearing despite evidence that defendant was ingesting

psychotropic medication at the time of the trial and/or sentencing

hearing. 725 ILCS 5/104--21(a) (West 1992). However, under the law

as espoused by a majority of this court in People v. Kinkead, 168

Ill. 2d 394, 397 (1995), this court would first have to remand this

cause for a hearing to determine whether defendant was actually

taking psychotropic medication at the time of trial and/or

sentencing because of the uncertainty about this in the record as

currently developed. We decline to order such a hearing on remand,

as it would be redundant in light of our determination that a new

trial is otherwise required under section 104--11.

II. Failure to Secure a Written Jury Waiver in Violation of

      Section 115--1, Hearsay Evidence Admitted Pursuant to Section

               115--10 and Guilt Beyond a Reasonable Doubt

     Because we reverse defendant's conviction on fitness grounds,

we need not decide defendant's argument that the trial court erred

in securing defendant's written jury waiver (see 725 ILCS 5/115--1

(West 1992)) or that certain hearsay testimony was elicited in

violation of section 115--10 of the Code of Criminal Procedure of

1963 (725 ILCS 5/115--10 (West 1992)). We do observe, however, that

there was sufficient evidence to support defendant's conviction and

sentence; consequently, there is no double jeopardy impediment to

a new trial. People v. Brown, 169 Ill. 2d 132, 169 (1996).

                                CONCLUSION

     We conclude that because a bona fide doubt regarding

defendant's fitness arose at trial after which a fitness hearing

was not held, defendant's conviction must be reversed and the cause

remanded for a new trial.

     The judgments of the appellate and circuit courts are reversed

and the cause is remanded to the circuit court for a new trial.

Judgments reversed;

                                                            cause remanded.