(No. 30429.

PETER SCHROERS, Appellant, *vs.* THE PEOPLE OF THE
STATE OF ILLINOIS, Appellee.

*Opinion filed March 18, 1948.*

PETER SCHROERS, *pro se.*

GEORGE F. BARRETT, Attorney General, of Springfield, (J. MAX MITCHELL, State's Attorney, of Benton, of counsel,) for the People.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

An indictment returned in the circuit court of Franklin County in January, 1923, charged appellant, Peter Schroers, with the crime of murder. On February 26, 1923, he was before the court represented by counsel, and after being duly arraigned entered a plea of not guilty. On April 2 following, the case was called for trial but before the selection of the jury had been completed appellant obtained permission to withdraw his plea of not guilty and tendered a plea of guilty. The plea was accepted and he was adjudged to be guilty of murder and on April 3, 1923, he was sentenced to the penitentiary for life. The victim of his unlawful act was his wife, Marie.

In January, 1947, appellant filed a motion in the court from which he had been sentenced asking that the judgment of conviction be recalled and set aside by reason of error of fact. The grounds alleged in support of the motion are that appellant was insane or mentally ill, that he could not understandingly enter a plea of guilty, and that if the court had known of such fact, the judgment would not have been entered on his plea. The sufficiency of appellant's motion for writ of error *coram nobis* was challenged by a countermotion to dismiss, filed on behalf of the People. The .countermotion to dismiss admitted facts well pleaded. (*Chapman* v. *North American Life Ins. Co.* 292 Ill. 179.) The countermotion was sustained and after appellant had elected to stand on his motion, a judgment was entered striking the cause.

The grounds stated in appellee's countermotion to dismiss may be summarized under three general heads: (1) That it appears from appellant's motion and exhibits

attached that there is no error in the record, that if there was any error, it is traceable to the misjudgment of appellant or his attorney in tendering the plea of guilty; (2) that appellant relies upon evidence that would not be admissible to prove the facts contended for and that when the motion is stripped of such immaterial and irrelevant matter, it does not contain facts that would warrant action, and (3) that since the writ was not asked for within five years from the rendition of the judgment the same is barred by limitation.

The writ of error *coram nobis* as known at the common law was abolished by the act of 1872, and section 66 of the Practice Act was substituted therefor. (Ill. Rev. Stat. 1874, chap. 110, par. 67.) The substance of such act was that the errors which could have been raised by the common-law writ were available by the statutory motion. Such statute was re-enacted, with slight changes, to become section 89 of the Practice Act of 1907, and in almost the same language it is now section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1947, chap. 110, par. 196.) The present statute provides that all errors of fact which could have been corrected by the common-law writ may now be corrected by the court in which the error was committed, on motion in writing made at any time within five years after the rendition of the final judgment in the case.

The facts disclosed by appellant's motion, and which appellee's countermotion to dismiss admits to be true, are as follows: Appellant and his wife, Marie, were born in Germany. They came to this country when they were about twenty-seven years of age. He engaged in coal mining, first residing in the city of Belleville and later at West Frankfort. Their married life was turbulent, interspersed with quarrels and several temporary separations. One of such quarrels occurred on November 8, 1918, and at that time the wife, Marie, shot appellant in or near the right ear. The bullet fractured the skull, caused some

damage to the brain tissue and lodged at the base of the brain and in such close proximity to it that medical experts considered it unwise to remove it. Facial paralysis developed and when appellant was taken to the Barnes Hospital at St. Louis, Missouri, for treatment six weeks after the shooting, an operation was performed which tended to correct the paralyzed condition of the face.

It appears by affidavits of persons who knew appellant at the time he was wounded and after, that immediately following the shooting he became morose and appeared entirely changed. One or two of the affiants state that he did not know the members of his family and at one time he attempted suicide. On January 4, 1923, following a quarrel, appellant became greatly excited and very angry. His wife escaped from the home and ran into the home of a neighbor. Appellant followed her and fired three shots into her body, killing her instantly.

The day appellant was sentenced to the penitentiary, the then State's Attorney of Franklin County prepared a statement to be filed with the Department of Public Welfare, Division of Pardons and Paroles, setting forth a brief statement of the facts. He stated that there was no provocation for the crime, that his defense was insanity, a question on which there was evidence both for and against. When appellant made an application in June, 1933, to the Department of Public Welfare for parole, the attorney who was the former State's Attorney, addressed a second communication to the board. In this statement he referred to the fact that in his former letter he had stated that the defense was insanity and that there was evidence both for and against such defense. In the second letter he concedes that the former letter might have conveyed an erroneous impression and closes it by saying that the case was not submitted to a jury, that no evidence was heard, and that there were facts both for and against his defense of insanity. In a third letter dated January 18,

1943, addressed to the Department of Public Welfare, Division of Correction, the same attorney stated: "I well remember his conduct and appearance at the time he entered his plea of guilty. He sat in the court room crying and did not appear to have any too clear an understanding of what was going on. I doubt that he was normal mentally. To what extent he was abnormal I cannot say."

Joe Talford, who was the jailor and in custody of appellant in the county jail before the sentence, makes an affidavit in which he states that prior to his incarceration in the penitentiary, he observed appellant's son deliver certified checks to appellant, and that the following day appellant became angry and while enraged tore the checks into fragments and scattered them about the jail. He says that "he [appellant] apparently was unconscious of the actual happenings at that time."

William Winstead and Jewel Winstead make affidavit that they were present during the selection of the jury in the case in which appellant was a defendant, and that they heard the attorney who was defending appellant call appellant's spiritual adviser, asking him to urge appellant to enter a plea of guilty. The attorney is quoted in said affidavits as stating that he did not want to see an insane man hanged.

About eleven months after appellant had been incarcerated in the penitentiary he was examined by a State medical adviser. The report that he gave the warden of the penitentiary at that time refers to the history of the gunshot wound in the right ear and notes that the appellant had a right-side facial paralysis and deafness in the right ear. He says: "I am of the opinion that he still suffers from some inter-cranial involvement as a result of the injury. I also believe that he suffers considerably from dizziness * * *. I am also of the opinion, in mentality he is not entirely normal." Various other medical examinations were made of appellant, all culminating in reports

showing that he was impulsive, irritable, suffered from amnesia accompanied by dizziness, headaches and had buzzing sounds in the head. Frequently his symptoms were diagnosed as traumatic psychosis with deterioration resulting from the skull fracture and damaged brain tissue. These reports occurred frequently until 1931, when appellant was reported to have improved and was ordered returned to the penitentiary at Menard. In 1943, the State medical officers pronounced him as having recovered from the brain injury.

Thirty-nine affidavits are filed in support of appellant's motion, the substance of which discloses that prior to the time of his being shot he was amiable, a steady worker, a good father and provided for his family. The same affidavits indicate that soon after the shooting he was entirely changed, becoming morose, mentally disturbed, and that such condition existed at the time of the murder and when he was sentenced to the penitentiary.

It is contended on behalf of the People that this court is without jurisdiction to entertain this cause by direct appeal. Such contention is founded on the thought that a motion under the statute for correction of error of fact is a purely civil action, and that appeals entered in such a case are reviewable according to the statute that controls appeals in civil cases. It is well settled that a motion under the statute to correct error of fact is applicable to a criminal action, (*People ex rel. Courtney* v. *Green,* 355 Ill. 468; *People* v. *Crooks,* 326 Ill. 266,) and that when filed, it is, as to burden of proof, degree of proof required and similar matters, in the nature of a civil action. It is hardly correct to say that a motion filed under the statute in a criminal action is a purely civil action. The action, the judgment in which is to be tested by the motion, continues its identity as a criminal case. We recognize previous holdings that the filing of such a motion is the starting of a new action, and that when prosecuted to a final judg-

ment is appealable the same as a final judgment entered in a civil action. However, these incidents of the action do not transform the original action, in which the judgment being tested was entered, from a criminal case to a civil action.

Section 14 of division XV of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 780½,) divides criminal actions into two classes, those "below the grade of felony" and those "above the grade of misdemeanors." Appeals or writs of error in the former class are taken directly to the Appellate Court and appeals or writs of error in all criminal cases above the grade of misdemeanors come directly to this court.

In a long line of cases involving motions for writ of error *coram nobis* in felony cases, this court has assumed jurisdiction by direct proceeding and disposed of the cases on the merits. Some of such cases are: *People* v. *Crooks,* 326 Ill. 266; *People* v. *Moran,* 342 Ill. 478; *People* v. *Bruno,* 346 Ill. 449; *People* v. *Ogbin,* 368 Ill. 173; *Johnston* v. *People,* 383 Ill. 91; *Sims* v. *People, ante,* p. 159. This court has jurisdiction to dispose of this case on its merits and anything in the opinion in *People* v. *Cohen,* 376 Ill. 382, or the opinion in any other case to the contrary, is hereby overruled.

In both civil and criminal cases this court has consistently held that a motion under section 72, or what was formerly section 89, is an appropriate remedy to correct certain kinds of error. The error of fact which the writ might be employed to correct has been frequently illustrated as in a case where one of the parties died pending the suit and before the judgment was entered; where there is an infant and the party was not properly represented by guardian; or coverture, where the common-law disability still exists; or insanity at the time of the trial; or a valid defense which existed in the facts of the case but which without negligence on the part of defendant was

not made, having been prevented either through duress, fraud or by excusable mistake. Some of the criminal cases where such illustrations have been given are: *People v. Crooks,* 326 Ill. 266; *People v. Shroyer,* 336 Ill. 324; *People v. Moran,* 342 Ill. 478; *People v. Thon,* 374 Ill. 624, and *Johnston v. People,* 383 Ill. 91.

It is contended on behalf of the People that the error of fact sought to be corrected by the motion is traceable to appellant and his counsel, and that their negligence in failing to assert the defense bars the action. Such contention is closely related to the further point, urged on behalf of the People, that the suit was not started within five years after the rendition of the judgment. The statute provides that when the person entitled to make the motion shall be *non compos mentis,* or under duress at the time of passing judgment, the time of such disability shall be excluded from the computation of said five years. If appellant's mental condition at the time he entered his plea was, as shown in the allegations of the motion and the corroborating proof, then he was *non compos mentis,* and the statute did not run against him until he regained his normal mental condition. The allegations indicate that such mental restoration did not take place until about 1943 and, if that be correct, then he filed his motion within five years after his disability had been removed.

The allegations of the motion and other corroborating facts shown in the exhibits tend to prove that appellant was in such mental condition when he pleaded guilty that he could not understand the effect of his plea or the defense of insanity that he might have interposed. There is nothing in the record to indicate that the mental condition of appellant was in any way brought to the attention of the court. It is conceivable that the mental condition described in the motion and the affidavits was present when the plea of guilty was entered and that the court did not have knowledge of such condition. It seems obvious that if the mental

condition of appellant as described in the motion had been brought to the attention of the trial judge, the plea of guilty would not have been accepted and he would have had a trial on the question as to whether he was sane or insane at the time he committed the crime. Section 12 of division II of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 592,) provides that an insane person, without lucid intervals, shall not be found guilty of any crime or misdemeanor with which he may be charged; provided, the act so charged as criminal shall have been committed in the condition of insanity. It further provides that if it shall appear that the act was committed as charged, but that at the time of committing the same, the person so charged was insane, the jury shall so find by its verdict. If he has not entirely recovered from such insanity, he is to be committed to the Department of Public Welfare but in the event the jury should find that he had recovered from the insanity, he is to be discharged from custody. Appellant was not given the right of defense afforded by this statute and his mental condition then and since has been such that the statute of limitations did not begin to run so as to bar the present action. The court erred in sustaining the countermotion to dismiss and in striking the cause.

Appellant's prayer is that the judgment of the circuit court of Franklin County be reversed and the cause remanded with instructions to grant appellant a hearing on his motion to correct errors in fact, and if the allegations of such motion be proved, to recall, revoke, annul, or set aside the judgment entered April 3, 1923, committing him to the penitentiary. The prayer is granted and it is so ordered. The judgment is reversed and the cause is remanded, with directions.

*Reversed and remanded, with directions.*