NOTICE

Decision filed 11/14/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220440-U

NO. 5-22-0440

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 11-CF-541 |
| | ) | |
| RAY T. SLACK, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The court did not err in dismissing the defendant's petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) where it was not timely filed and did not challenge a void judgment and where the petition did not assert a valid claim or defense. Although the State violated Rule 23 when it failed to provide the defendant with a copy of an unpublished decision it cited in support of its motion to dismiss, any error in allowing the State to cite the case was harmless. The court did not abuse its discretion in declining to appoint counsel to represent the defendant on appeal.

¶ 2    The defendant, Ray T. Slack, was convicted of first degree murder and armed robbery. Nearly six years after his conviction and nearly four years after this court affirmed his convictions on appeal, the defendant filed a petition for relief from judgment, asserting that his conviction was void because one of the investigating officers allegedly testified falsely at a grand jury hearing. The State filed a motion to dismiss the petition on the grounds that it was not timely filed within

1

two years after the final judgment. See 735 ILCS 5/2-1401(c) (West 2016). The trial court granted that motion. The defendant filed a notice of appeal in which he also requested that counsel be appointed to represent him. The trial court denied that request. On appeal, the defendant contends that (1) the two-year statute of limitations is inapplicable because inaccurate testimony during grand jury proceedings rendered his conviction void; (2) the court erred in denying his request to strike the State's arguments relying on an unpublished decision without having provided a copy of that decision to the defendant; and (3) the court erred in denying the defendant's request to appoint counsel to represent him in this matter on appeal. We affirm.

¶ 3                              I. BACKGROUND

¶ 4      In 2011, the defendant was charged with first degree murder (720 ILCS 5/9-1(a)(2) (West 2010)) and armed robbery (*id.* § 18-2(a)(1)) in the death of his 77-year-old neighbor, Bob Garrett. In 2012, the defendant was convicted on both charges and sentenced to 40 years in prison on the murder charge and 7 years on the robbery charge, to be served consecutively. In May 2014, this court affirmed his convictions and sentences on direct appeal. See *People v. Slack*, 2014 IL App (5th) 120216.

¶ 5      On April 14, 2018, the defendant filed a *pro se* petition for relief from judgment (735 ILCS 5/2-1401 (West 2016)). He alleged that the indictment against him was obtained through fraud because Detective Marcus Pulido provided "false and misleading testimony" to the grand jury. He argued that the trial court's jurisdiction to hear the criminal case against him was thus procured through fraud. As such, he argued, the two-year statute of limitations found in section 2-1401(c) does not apply to this case. See *id.* § 2-1401(c).

¶ 6      To understand these allegations, it is necessary to discuss the admissions the defendant made during three video-recorded interviews with police and Detective Pulido's grand jury

2

testimony concerning those interviews. We will set forth only those details necessary for an understanding of the arguments before us.

¶ 7    The defendant was interviewed by detectives three times while he was in custody. Video recordings of those interviews were admitted into evidence at his eventual trial on the charges. Initially, the defendant denied that he even knew Garrett. He admitted for the first time that he knew Garrett halfway through the first interview. He further admitted that he had consumed a lot of alcohol on the night Garrett was killed and that he recalled very little of the events at issue. Over the course of the three interviews, the defendant acknowledged that he knew Garrett fairly well and that he regularly borrowed money from him.

¶ 8    During the second and third interviews, the defendant admitted that on the night of the murder, he went to Garrett's house and asked to borrow five dollars. He acknowledged that he became angry when Garrett refused. The defendant told detectives that he threw a full can of beer through Garrett's window in anger, breaking the window. He stated that Garrett responded by running down the steps toward him. The defendant stated that he saw Garrett reach behind his back several times during the encounter. He admitted that he punched Garrett, struck him with the pedestal of a birdbath, and pressed a string to Garrett's throat, nearly choking him. He told police that he believed Garrett was holding a gun behind his back. According to the defendant, Garrett had shot at him in a previous incident. The defendant admitted that he threw the pedestal over the fence.

¶ 9    Finally, the defendant admitted taking cash from Garrett's wallet. He insisted, however, that he had not gone to Garrett's house with the intention of robbing him. Instead, the defendant told police he took the money when he saw Garrett's wallet on the ground after the incident.

3

¶ 10    In his testimony before the grand jury, Detective Pulido described the defendant's admissions in his statements. His testimony was largely consistent with the recordings; however, there was one minor difference and there were a few details he did not include. After Detective Pulido testified that the defendant admitted throwing a beer can through Garrett's window, he testified as follows: "At that point, Mr. Garrett eventually became upset, began walking down the stairs yelling at Mr. Slack for what he had just done." As discussed earlier, the defendant described Garrett's reaction as running down the stairs, rather than walking. In addition, Detective Pulido did not testify that the defendant told police Garrett reached behind his back multiple times or that he told them about a previous incident in which Garrett allegedly shot at him.

¶ 11    After a series of delays not pertinent to this appeal, the State filed a motion to dismiss the section 2-1401 petition on June 1, 2021. The State argued that (1) the petition was not timely filed within two years of entry of the judgment challenged (see 735 ILCS 5/2-1401(c) (West 2016)); and (2) the defendant did not support his petition with affidavits attesting to matters outside the record (see *id.* § 2-1401(b)).

¶ 12    The matter came before the court for a hearing on May 5, 2022. At the outset, the trial judge noted that although the defendant was representing himself in this case, an assistant public defender was present to observe the proceedings because she represented the defendant in "other postconviction matters, but not concerning this 1401 petition."

¶ 13    The defendant argued that the court should grant his 2-1401 petition on the grounds that the video recordings of his police interviews, which were admitted into evidence at his trial, contradicted "anything that the State's Attorney and the Alton Police testified to the grand jury." He asserted that had the video been played for the grand jury, he would not have been indicted because the video "would have told the truth." In addressing the State's motion to dismiss, the

4

defendant argued that the two-year time limit in section 2-1401(c) does not apply because he alleged "fraud and false and inaccurate testimony, [and] that [he was] coming in under the F section to void judgment." See *id.* § 2-1401(f). He argued that the State had forfeited any argument that the judgment was voidable rather than void because it had not specifically raised that argument in its motion to dismiss or in any amended motion to dismiss. However, he did not attempt to argue that the judgment was void rather than voidable.

¶ 14 The State argued that the court should dismiss the petition for three reasons: (1) the petition was not timely filed, (2) it was not supported by affidavits, and (3) the defendant has no meritorious defense to the underlying criminal proceedings. The prosecutor acknowledged that the two-year limitations period in section 2-1401 does not apply to judgments that are void. However, she argued that alleged "fraudulent procurement of grand jury testimony does not make a judgment or conviction void." She noted that the First District had decided that question in the case of *People v. McCoy*, 2021 IL App (1st) 170299-U. She asked the judge if he wanted her to provide either a copy of the case or a citation to it. He responded by stating that she could provide him with a copy of the case after the hearing. The State further argued that the defendant failed to support his claim that the grand jury testimony was false and that he failed to provide any evidence or argument that would have negated the grand jury's finding of probable cause.

¶ 15 Before taking the matter under advisement, the court addressed the defendant, stating, "Well, Mr. Slack, let me tell you how I feel about those time limitations." The court went on to explain as follows: "I think it's more important to get to the issues as opposed to those limitations. I'm not very much on strict statute of limitations. They've raised that point, but I don't consider that very important." We note that the status of *McCoy* as an unpublished decision was not brought up at the hearing.

¶ 16    On May 19, 2022, before the court issued its decision, the defendant filed a motion to strike the State's argument relying on the unpublished case of *People v. McCoy*. He argued that the State's use of the case was improper because (1) the State did not file any amended pleading "to add this case as a defense against defendant[']s petition" and (2) citation to an unpublished decision was improper for purposes other than to support contentions regarding double jeopardy or the law of the case. We note that, as the defendant acknowledges on appeal, unpublished decisions issued after January 1, 2021, as *McCoy* was, may now be cited as persuasive but nonbinding authority. However, Illinois Supreme Court Rule 23 requires that a party citing an unpublished decision furnish a copy of that decision to the court and to opposing parties, which did not occur in this case. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

¶ 17    On June 10, 2022, the court entered a written order granting the State's motion to dismiss. The court explained that a section 2-1401 petition is a civil remedy that is available in criminal cases, but it is available only if the defendant can show that he had a claim or defense that would have precluded conviction. The court noted that section 2-1401 does not provide for "a general review or substitute for direct appeal." The court further noted that its order did not dispose of the defendant's postconviction petition, which remained pending. The court did not address the defendant's motion to strike the State's argument citing *McCoy*.

¶ 18    The defendant filed a timely notice of appeal on July 5, 2022. In it, he noted that he was indigent and that he wanted an attorney appointed to represent him on appeal. On July 8, 2022, the court entered an order denying the defendant's request for counsel, explaining that he is not entitled to the appointment of counsel in proceedings on a section 2-1401 petition. This court subsequently denied a similar request.

6

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, the defendant argues that (1) the court erred in dismissing his petition because inaccurate testimony during grand jury proceedings rendered his conviction void, not merely voidable, and the two-year statute of limitations in section 2-1401 is therefore inapplicable; (2) the court erred in denying the defendant's request to strike the State's arguments relying on the unpublished case of *People v. McCoy* because the State violated Illinois Supreme Court Rule 23(e)(1) by failing to first provide a copy of that decision to the defendant; and (3) the court erred in denying the defendant's request to appoint counsel to represent him on appeal in this matter. We reject each of these contentions.

¶ 21                              A. Motion to Dismiss

¶ 22    The defendant argues that the court erred in granting the State's motion to dismiss. We review *de novo* the trial court's dismissal of a section 2-1401 petition. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007). Applying this standard of review, we reject the defendant's contentions.

¶ 23    Although the court's stated basis for granting the motion to dismiss was the defendant's failure to establish that he had a meritorious claim or defense, the bulk of the defendant's argument centers on the applicability of the two-year statute of limitations found in section 2-1401(c). See 735 ILCS 5/2-1401(c) (West 2016). We note that either untimeliness or a failure to assert or establish a meritorious claim or defense may serve as a proper basis for dismissal. In addition, we may affirm the trial court's ruling on any basis appearing in the record, whether it was relied upon by the trial court or not. See *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 38. We will thus address both issues.

¶ 24                    1. *Two-Year Statute of Limitations*

¶ 25    By its express terms, section 2-1401 provides that petitions must be filed within two years after entry of the underlying judgment or order. 735 ILCS 5/2-1401(c) (West 2016). There is no dispute that the defendant did not file his petition within this time limit. Two exceptions to this time limit are pertinent here. First, the two-year period is tolled during any period in which the grounds for relief have been fraudulently concealed from the petitioner. *Id.* Second, the two-year time limit does not apply if the judgment being challenged is void. *Id.* § 2-1401(f). The defendant asserts that both exceptions apply here. We disagree.

¶ 26    We will first consider whether the two-year statute of limitations was tolled due to fraudulent concealment of the grounds for relief. As we have just mentioned, the two-year time limit is tolled during periods of time in which the asserted ground for relief is fraudulently concealed from the petitioner. *Id.* § 2-1401(c); *People v. Thomas*, 364 Ill. App. 3d 91, 98 (2006). In order to fall within this exemption, the petitioner "must allege facts demonstrating that the opposing party affirmatively attempted to prevent the discovery of the purported grounds for relief and must offer factual allegations demonstrating good faith and due diligence in attempting to uncover such matters either before trial or within the limitations period." *Thomas*, 364 Ill. App. 3d at 99. The defendant's petition in this case contains no such factual allegations.

¶ 27    The only ground for relief asserted in this case is the defendant's contention that the State presented "false and misleading" testimony to the grand jury resulting in an indictment that prosecutors otherwise could not have obtained. The defendant alleged in his petition that prosecutors acted fraudulently in presenting Detective Pulido's testimony to the grand jury and in not presenting the video recordings of his interviews with police. In addition, he alleged that he was not present at the grand jury hearing and was thus unaware of Detective Pulido's testimony

8

and unable to respond to it. However, the petition is devoid of any factual allegations concerning affirmative steps taken by the State to prevent the defendant from learning what testimony was presented to the grand jury. It is similarly devoid of any factual allegations to establish that the defendant exercised due diligence in his efforts to discover the testimony either at trial or before the two-year limitations period expired. Thus, the two-year time limit was not tolled.

¶ 28     We now turn our attention to the issue that is the focus of the defendant's arguments— whether the allegations in the petition, if true, would render the judgment of conviction void. As the defendant correctly argues and the State acknowledges, a section 2-1401 petition challenging a judgment on the basis that it is void, rather than merely voidable, is not subject to the time limit set forth in subsection (c) or any of the other "procedural bars" in the statute. *People v. Thompson*, 2015 IL 118151, ¶ 31. Significantly, however, a judgment is void only under very limited circumstances. *Id.* ¶ 32.

¶ 29     First, a judgment or order entered without subject matter jurisdiction or without personal jurisdiction over the party is void. *Id.* Second, a judgment is void if it is based upon a statute that has been held to be unconstitutional on its face and void *ab initio*. *Id.* Prior to our supreme court's 2015 decision in *People v. Castleberry*, a criminal sentence that did not conform to statute was also considered to be void. In *Castleberry*, however, the supreme court abolished the void sentence rule. *Id.* ¶ 33 (citing *People v. Castleberry*, 2015 IL 116916, ¶ 19). Thus, only judgments that are entered in the absence of jurisdiction or on the basis of a statute that is void *ab initio* are recognized as void. *Id.* ¶ 34.

¶ 30     The defendant does not attempt to argue that his conviction was entered pursuant to an unconstitutional statute that was held to be void *ab initio*, and he does not contend that the court lacked personal jurisdiction over him. He does assert that the court's jurisdiction was invoked

9

fraudulently through the allegedly inaccurate and misleading testimony of Detective Pulido. This is so, he contends, because without this testimony, the grand jury would not have indicted him. We are not persuaded.

¶ 31 We first note that it is inconceivable that a grand jury would have declined to indict the defendant on the charges had Detective Pulido testified that the defendant told detectives that Garrett ran down the stairs, that Garrett reached behind his back, or that there had been a prior incident in which he fired a shot at the defendant. As the State correctly points out, the defendant's statements were played for a jury, which rejected his claim of self-defense. Although the defendant insists that what happened at trial is irrelevant, we emphasize that the standard of proof required at trial—proof beyond a reasonable doubt—is much higher than the probable cause required for a grand jury to return an indictment.

¶ 32 More importantly, however, the defendant's argument overlooks the very nature of jurisdiction. Illinois trial courts have jurisdiction over all justiciable matters, and that jurisdiction is conferred by the Illinois Constitution. *Castleberry*, 2015 IL 116916, ¶ 15. A justiciable matter is simply a controversy that is definite and concrete rather than a dispute that is moot or hypothetical. *Id.* Subject matter jurisdiction is the court's authority to hear the general class of cases to which the proceeding at issue belongs. *Id.* ¶ 12. Criminal prosecutions are undisputedly among the classes of cases courts have the power to hear. See *People v. Hughes*, 2012 IL 112817, ¶ 21. Thus, the court had jurisdiction to hear this case.

¶ 33 The defendant cites four cases in support of his contentions to the contrary—*People v. Harvey*, 196 Ill. 2d 444 (2001), *People v. Shaw*, 133 Ill. App. 3d 391 (1985), *People v. Mack*, 107 Ill. App. 3d 164 (1982), and *People v. Rivera*, 72 Ill. App. 3d 1027 (1979). None of these cases support his position.

10

¶ 34    *Harvey* was an appeal from a ruling on a section 2-1401 petition that challenged an extended-term sentence, asserting that it was void. *Harvey*, 196 Ill. 2d at 447-48 (overruling on relevant grounds recognized by *Thompson*, 2015 IL 118151, ¶ 33). Because it did not address the question before us, we find that *Harvey* is inapposite.

¶ 35    Although *Rivera* involved allegations more similar to those involved in the instant case, it was a direct appeal from a judgment of conviction. The defendant there argued, in relevant part, that "the trial court erred in assuming it had no authority to dismiss the indictment because of the allegedly perjured [grand jury] testimony." *Rivera*, 72 Ill. App. 3d at 1036. He alleged that two witnesses testified falsely before the grand jury due to police coercion, and he argued that this constituted a due process violation. *Id.* at 1037.

¶ 36    The appellate court agreed with the defendant that a trial court has the inherent authority to dismiss an indictment on the basis of a due process violation. *Id.* The court explained, however, that it is ordinarily improper to challenge an indictment on the basis of inadequate evidence or for courts to reconsider the evidence before a grand jury. *Id.* at 1037-38. The court went on to state, "We do not doubt that a court could properly dismiss an indictment based upon perjured testimony if the denial of due process was established 'with certainty.' " *Id.* (quoting *People v. Lawson*, 67 Ill. 2d 449, 457 (1977)). However, the court concluded that the defendant in that case did not establish a due process violation with certainty because the police officers involved denied the allegations that they had coerced the witnesses. *Id.*

¶ 37    Similarly, in *Shaw*, another direct appeal, the appellate court noted that trial courts have the authority to dismiss an indictment based upon perjured testimony before a grand jury, but emphasized that "a court must proceed with restraint in ascertaining due process violations in indictment procedures and should dismiss an indictment only when the violation is clear and has

11

been found with certainty." *Shaw*, 133 Ill. App. 3d at 398-99. The court found no due process violation where a witness's testimony was incorrect, but where there was no evidence that the witness knew his testimony was inaccurate. *Id.* at 399.

¶ 38    Both *Rivera* and *Shaw* are inapposite because they were both direct appeals from convictions; they did not involve untimely filed section 2-1401 petitions. Thus, the appellate courts could consider errors that occurred at trial regardless of whether the judgments appealed were void. In addition, neither case supports the defendant's suggestion that, voidness aside, the indictment against him should have been dismissed. The discrepancy between Detective Pulido's grand jury testimony and the defendant's statements to police during the interviews was insignificant, and there is no indication that Detective Pulido was even aware of the slight discrepancy when he testified.

¶ 39    We likewise find no support for the defendant's position in *Mack*, the final case he cited. Unlike *Rivera*, *Shaw*, and this case, *Mack* did not involve allegedly false or inaccurate grand jury testimony; indeed, the appellate court noted there was no indication in the record as to what the grand jury testimony was in that case. *Mack*, 107 Ill. App. 3d at 171. Rather, the case involved a ruling on a pretrial motion to quash charges against the defendants based on prosecutorial misconduct. *Id.* at 170. Specifically, the defendants alleged that investigators lied to prison inmates to obtain information from them and generally behaved towards those inmates in a manner described as "coaxing and coercive." *Id.* at 170-71. The inmates eventually testified against the defendants at their trial. *Id.* at 168-70.

¶ 40    On appeal from the trial court's decision to dismiss the defendants' motion to quash the charges, the appellate court observed that "[a] trial court has inherent power to dismiss a charge when due process so requires, but this should rarely be done." *Id.* at 171. Ultimately, the court

found that the trial court correctly found that there was no prosecutorial misconduct in the interactions between the State and its witnesses. *Id.*

¶ 41   We find that *Mack* fails to support the defendant's petition for three reasons. First, the court did not need to address the voidness of a judgment. Second, the court likewise did not consider the propriety of dismissing a charge based on inaccurate grand jury testimony. Third, like *Rivera* and *Shaw*, the court's rationale demonstrates that due process requires the dismissal of charges in extremely rare circumstances.

¶ 42   For all these reasons, we conclude that the judgment of conviction was not void. As such, the two-year limitations period in section 2-1401 applied. Because the defendant filed his petition long after this period expired, his petition was properly dismissed.

¶ 43                    2. *Meritorious Claim or Defense*

¶ 44   A petition for relief from judgment pursuant to section 2-1401 is a civil remedy, but it can be used in both civil and criminal cases. *Vincent*, 226 Ill. 2d at 8. Its purpose in criminal proceedings is to correct any errors of fact that were unknown to the petitioner and the court at the time of trial which would have prevented the entry of the judgment of conviction had the true facts been known at the time. *Thomas*, 364 Ill. App. 3d at 98. To be entitled to relief, a petitioner must establish the existence of a claim or defense that would have precluded entry of the judgment in the original proceeding. *Vincent*, 226 Ill. 2d at 7-8. The petitioner must also demonstrate due diligence in discovering that claim or defense and in bringing the petition. *Id.* at 8.

¶ 45   Here, the defendant not only could, but did, raise the defense of self-defense at trial. He does not allege that there was any other defense he could have presented. A section 2-1401 petition can be dismissed for failure to state a meritorious defense even assuming the truth of all its

13

allegations. *Id.* We therefore find no error in the trial court's determination that the defendant's petition was subject to dismissal for failure to allege a meritorious defense.

¶ 46                              B. Motion to Strike the State's Argument

¶ 47    The defendant filed a motion to strike the State's argument, in which it relied upon *McCoy*, an unpublished decision of the First District. As mentioned previously, he argued then that the State's citation to the case was improper because unpublished cases may only be cited for limited purposes. Prior to a recent amendment to Rule 23, this argument was correct; unpublished cases could be cited only to support claims of double jeopardy, *res judicata*, or collateral estoppel or to establish the law of the case. See *People v. Petty*, 311 Ill. App. 3d 301, 303 (2000) (citing Ill. S. Ct. R. 23(e) (eff. July 1, 1994)). Now, however, unpublished decisions of the Illinois Appellate Court issued after January 1, 2021, may be cited as persuasive, but nonbinding, authority. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021). The amended version of the rule provides that a party who wishes to cite an unpublished decision must furnish a copy of the decision to the other parties. *Id.* On appeal, the defendant argues that the State failed to comply with this requirement, thus violating Rule 23. He further argues that the State's failure to comply with this requirement prejudiced him because it prevented him from being able to address the State's argument.

¶ 48    In response, the State acknowledges that its failure to furnish him with a copy of the decision constituted a "technical violation" of Rule 23. The State argues, however, that any error in the court's decision to allow the State to cite *McCoy* was harmless. We remind the State that the Illinois Supreme Court rules are not mere suggestions; they have the force of law and must be followed. See *People v. Glasper*, 234 Ill. 2d 173, 189 (2009). It is an understatement to call the State's failure to comply a "technical violation." Nevertheless, we agree that the error was harmless.

14

¶ 49　First, for the reasons we have already discussed, we find that the court correctly granted the State's motion to dismiss the petition. Nothing the defendant could have argued in response to the State's mention of *McCoy* would have changed the outcome of the case.

¶ 50　Second, as we stated earlier in this decision, the trial court emphasized in its decision that the defendant failed to establish that he had a valid defense in the underlying action, as required. See *Vincent*, 226 Ill. 2d at 7-8. As we have also already discussed, we agree with the court's conclusion. Thus, neither the two-year statute of limitations nor the State's citation to *McCoy* appeared to have played any role in the court's decision. We therefore find that any error in the court's apparent decision not to strike the portion of the State's argument in which it cited *McCoy* was harmless.

¶ 51　　　　　　　　C. Request for the Appointment of Counsel on Appeal

¶ 52　The defendant's final contention is that the court erred in refusing to appoint an attorney to represent him in this appeal. We disagree.

¶ 53　The defendant argues that when a section 2-1401 petition requests relief from judgment in a criminal case, as the petition filed in this case does, "appellate counsel must be appointed." In support of that contention, he cites *Schroers v. People*, 399 Ill. 428 (1948), a 75-year-old decision arising under a predecessor statute to section 2-1401. There, the defendant filed a collateral challenge to a conviction entered on his guilty plea, asserting that he was mentally ill and unable to understand his plea when he pled guilty and that, had the court known this at the time, it would not have accepted his plea. *Id.* at 429. The right to appointed counsel was not at issue in *Schroers*. One of the questions before the court was whether the Illinois Supreme Court had jurisdiction over the direct appeal to it from the trial court. *Id.* at 433. It was in this context that the supreme court observed that despite the defendant's use of civil remedy, his underlying case did not lose its

15

characteristic as a criminal case. *Id.* at 433-34. The defendant points to this language in asserting that the appointment of appellate counsel is mandatory. We reject his contention.

¶ 54    Presumably, the defendant is arguing that the constitutional right to counsel that applies at trial and on direct appeal applies here because the underlying action is a criminal case. However, it is well settled that there is no right to counsel in section 2-1401 proceedings, even if the underlying judgment was criminal. *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 44 (citing *People v. Kane*, 2013 IL App (2d) 110594, ¶ 21). Notably, even under the Post-Conviction Hearing Act, a criminal procedure mechanism for collaterally challenging criminal convictions or sentences, the right to counsel is wholly statutory, rather than constitutional. *Id.* ¶ 24. Thus, while trial courts have the discretion to appoint counsel when a defendant challenges his conviction using a section 2-1401 petition, they are not obligated to do so. *Id.* ¶ 44 (citing *Kane*, 2013 IL App (2d) 110594, ¶ 21).

¶ 55    Although the defendant asserts that *pro se* petitioners like himself are at a disadvantage in section 2-1401 proceedings, he does not advance any argument that the court abused its discretion in refusing to appoint counsel in this specific case. Although he has therefore forfeited any such argument (see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)), we note that we find no abuse of the court's discretion.

¶ 56                                III. CONCLUSION

¶ 57    For the foregoing reasons, we affirm the court's judgment.


¶ 58    Affirmed.

16